**WAHPETON CANVAS CO., South Dakota, Inc., a South Dakota Corporation, and Primewood, Inc., a North Dakota Corporation, Plaintiffs,**

v.

**Donald BREMER, an individual doing business as Sioux City Tarp Manufacturing and Canvas Repair, Defendant.**

No. C 93–4093.

United States District Court,
N.D. Iowa,
Western Division.

March 30, 1995.

As Amended May 22, 1995.

Lester J. Savit of Jones Day Reavis & Pogue, Chicago, IL, for plaintiffs.

Edmund J. Sease of Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, IA, for defendant.

## TABLE OF CONTENTS

I. INTRODUCTION ................................................... 865
II. FINDINGS OF FACT .............................................. 865
   A. Uncontested Facts .............................................. 865
   B. Contested Facts ................................................ 867
III. CONCLUSIONS OF LAW ........................................... 867
   A. Standard for Summary Judgment ................................. 867
   B. Repair versus Reconstruction ..................................... 869
   C. Sale to Svartoien ............................................... 871
      1. Agency Theory .............................................. 871
      2. Sale of the Kit .............................................. 872
   D. Validity of the Reissue Oath ..................................... 872
IV. CONCLUSION ................................................... 874

## ORDER REGARDING MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT

BENNETT, District Judge.

In this patent infringement action, Defendant Donald Bremer's motion for summary judgment and partial summary judgment raises four discrete issues: first, whether replacement of less than all of the parts of the patented roll-up tarp unit at any given time constitutes legally permissible repair and not infringing reconstruction; second, whether the authorized, but surreptitious, purchase by an employee of Plaintiff Wahpeton Canvas Company from Defendant of a complete patented roll-up tarp unit constitutes an act of infringement; third, whether the sale of a complete, but unassembled, roll-up tarp unit infringes the patent in suit; and finally, whether claims 14 through 32 of the patent in suit are invalid due to a defective reissue oath.

## I. INTRODUCTION

This lawsuit involves alleged infringement by Defendant Donald Bremer d/b/a Sioux City Tarp Manufacturing and Canvas Repair ("Bremer") of a patent for a roll-up tarp for trailers owned by Plaintiff Primewood, Inc. and assigned to Plaintiff Wahpeton Canvas Co., South Dakota, Inc. (collectively "Wahpeton"). On October 20, 1993, Wahpeton filed suit against Bremer alleging that Bremer's making, using, and selling of a roll-up tarp infringed the patent in suit. On April 7, 1994, Bremer filed his second amended answer and counterclaim in which he alleged violations of Sherman Act, 15 U.S.C. §§ 1 and 2. Specifically, Bremer alleges in his counterclaim that Wahpeton has instructed its authorized dealers not to sell repair parts to Bremer and others similarly situated. Second Am. Answer and Countercl. at ¶ 14. Bremer asserts that by engaging in this course of conduct, of refusing to sell repair parts, Wahpeton and its authorized dealers have entered into an illegal tying arrange-

ment to monopolize the secondary market for the sale of repair services and repair parts in violation of sections 1 and 2 of the Sherman Act. *Id.* at ¶ 18.

This matter comes before the court on Bremer's Motion for Summary Judgment and Partial Summary Judgment (# 35). Wahpeton has filed a timely resistance to Bremer's motion. A hearing on Bremer's motion was held on March 17, 1995. Wahpeton was represented at the hearing by Lester J. Savit of Jones Day Reavis & Pogue, Chicago, Illinois, and A.J. Stoik of Klass, Hanks, Stoos, Stoik & Villone, Sioux City, Iowa. Bremer was represented by Edmund J. Sease of Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, Iowa. The matter is now deemed fully submitted.[1]

The court concludes that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a).

## II. FINDINGS OF FACT

### A. Uncontested Facts

For the purposes of this summary judgement motion only, the court finds the following facts:

Wahpeton is the assignee of United States Patent Re. 31,746 (" '746 patent"), entitled "Roll–Up Tarp for Trailers."[2] The '746 patent is a reissue patent. The '746 patent pertains to roll-up trailer covers. One side edge of the cover is attached to a longitudinal upper edge of a trailer box and the other side, or free edge of the cover is associated with a roll tube. A universal joint connects the roll tube to a crank turnable from the ground to roll and unroll the cover. A latching means is employed to secure the cover in place. Securing the crank locks the cover in place. As the Federal Circuit has explained:

> The latching means disclosed in the '746 patent is a plate mounted along and angularly depending from the entire upper

---

1. The parties are to be commended for their respective presentations in this case. The parties' presentations were well prepared and conducted in an extremely professional manner.

2. Wahpeton sells the '746 roll-up tarps under its registered trademark SHUR–LOK. Wahpeton indicated at the hearing that it had sold approximately 150,000 '746 roll-up tarps.

edge of the truck box opposite that to which the cover is attached. Latching is accomplished by turning the crank counterclockwise to unroll the cover over the truck box and plate until the roll tube dangles below the plate, then continuing to turn the crank counterclockwise and rerolling the tube in the same direction to reroll the cover onto the tube and thus to draw the tube upwardly until it securely engages the underside of the plate and is wedged between the plate and the truck wall.

*Wahpeton Canvas Co. v. Frontier, Inc.,* 870 F.2d 1546, 1549 (Fed.Cir.1989).[3]

On November 27, 1984, a reissue patent for the '746 patent was issued by the United States Patent and Trademark Office. In its submissions for a reissue patent, the '746 patent's inventors, William J. Shorma and Jerry R. Dimmer, as well as their counsel, James P. Ryther, submitted declarations in support of the reissue. John J. Feldhaus, the attorney who drafted the original patent also submitted a declaration. In his declaration, Feldhaus states that he conducted the patent interview without the assistance of either the inventors or their attorney.[4] Shorma and Dimmer both state in their declarations that the error in the original patent resulted from the failure of their attorney, John J. Feldhaus, to understand the scope of the invention.[5]

Bremer is in the business of selling tarps. Bremer's business also provides repair service and sells replacement parts for '746 roll-up tarps which were originally sold by Wahpeton or a Wahpeton authorized dealer. Wahpeton sells genuine parts to its regular customers, including Wilson Trailer in Sioux City, Iowa. In the past, Bremer has been able to secure replacement parts for '746 roll-up tarps from Wilson Trailer. Bremer maintains sufficient quantities of parts in stock that his business could construct a complete '746 roll-up tarp. Bremer admits to having constructed eight to ten complete '746 roll-up tarps for farm grain wagons in the past.[6]

On July 5, 1990, Wahpeton sent a letter to Bremer accusing Bremer of infringing the '746 patent. A copy of the '746 patent was enclosed in the letter. On January 5, 1993, Wahpeton sent a second letter to Bremer informing Bremer that a defendant in a lawsuit had testified that Bremer was installing units infringing the '746 patent. The letter notified Bremer of a consent decree entered in that lawsuit and of an injunction entered in that lawsuit prohibiting any further infringement of the '746 patent by either the defendant in that lawsuit, or those acting in concert with that defendant who received notice of the injunction.

To investigate whether Bremer was selling infringing products, Wahpeton sent an investigator, Marc Svartoien, to Bremer to purchase a roll-up system from Bremer. On September 21, 1993, Marc Svartoien placed an order with Bremer's employee, Jack Miller, for a roll-up tarp for a 16 foot trailer. Svartoien had been requested by Wahpeton

---

3. Illustrations of the '746 patent appear in *Wahpeton Canvas Co.,* 870 F.2d at 1557, fig. 1–3. Although the *Wahpeton Canvas Co.* case dealt with the original '746 patent and not the reissue '746 patent, the description of the device set forth above is equally applicable to the reissue '746 patent.

4. The Feldhaus declaration is located at tab BB of Wahpeton's exhibits. In his declaration, Feldhaus declares, in pertinent part, that

This error arose without any deceptive intent and I believe this error arose during the preparation and prosecution of the application because I did not anticipate the narrowness of the claims.

Feldhaus declaration at 4.

5. Copies of Shorma and Dimmer's declarations are located at tabs DD and EE of Wahpeton's

exhibits. Both Shorma and Dimmer state, in pertinent part, in their respective declarations:

That the error in drafting the claims too narrowly as set forth in my earlier reissue declaration was apparently based on a failure of the attorney drafting the claims to understand the scope of the invention. Specifically, I do not believe that the attorney appreciated that it was not necessary to specify a particular type of/or location for the latch or extension plate used in the construction, or that he appreciated the function of the crank means for achieving tension in the tarp or the function of the resilient means as it cooperates with the crank means.

Shorma declaration at 3; Dimmer declaration at 4.

6. Wahpeton sells '746 roll-up tarp units for farm gravity boxes.

to request such a unit from Bremer. On September 23, 1993, Svartoien purchased from Bremer a box containing all of the parts necessary for construction of a complete '746 roll-up tarp unit. Although the parts purchased by Svartoien were never assembled, Miller assumed that Svartoien would assemble all of the parts sold into a unit.

Subsequent investigation by Wahpeton revealed that since 1992 Bremer has had a third party, Kaiser Aluminum, manufacture approximately 700 copies of latch plate. Latch plate is a long flat piece of aluminum used to secure the free side of the roll-up tarp on a '746 roll-up tarp unit. Latch plate was not used in the construction of prior art roll-up tarps units, which were secured with straps or ratchets.

### B. Contested Facts

The parties dispute whether Bremer has offered for sale manufactured '746 roll-up tarps other than the kit sold to Svartoien and the eight to ten entire units Bremer admits to have manufactured for grain wagons. It is also contested whether Bremer has engaged in infringing activities such as converting prior art roll-up devices to infringing units, or committed contributory infringement by making repairs to infringing units. Whether Bremer is still able to purchase parts from Wilson Trailers is also disputed by the parties. Furthermore, the record is unclear as the purposes for which Bremer used the latch plate purchased from Kaiser Aluminum.

### III. CONCLUSIONS OF LAW

#### A. Standard for Summary Judgment

The Eighth Circuit recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure

have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini*, 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir.1992).

The standard for granting summary judgment is well established. Rule 56 of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

Fed.R.Civ.P. 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Munz v. Michael*, 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.*, 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone*, 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini*, 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[7] A court consid-

---

7. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hartnagel*, 953 F.2d at 394.

ering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here Wahpeton, and give Wahpeton the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz v. Michael*, 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.*, 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield*, 939 F.2d 666, 667 (8th Cir.1991), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

Procedurally, the moving party, Bremer, bears "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552); *see also Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir.1993). Bremer is not required by Rule 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Hartnagel*, 953 F.2d at 395.

"When a moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Wahpeton is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Products, Inc. v. Herrick*, 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)),

*cert. denied sub nom. Metge v. Bankers Trust Co.*, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir.1994).

In *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510, *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel*, 953 F.2d at 396 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552). If Wahpeton fails to make a sufficient showing of an essential element of a claim with respect to which they have the burden of proof, then Bremer is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith*, 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Burk*, 948 F.2d at 492; *Woodsmith*, 904 F.2d at 1247.

"Summary judgment is as appropriate in a patent case as in any other." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed.Cir. 1984); *see Continental Can Co. U.S.A., Inc. v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed. Cir.1991) ("Summary judgement is as available in patent cases as in other areas of litigation."); *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 795 (Fed.Cir.1990)

("As in other cases, the grant of summary judgment under Fed.R.Civ.P. 56, is appropriate in a patent case where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.") (footnote omitted); *see also C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.,* 911 F.2d 670, 672 (Fed.Cir.1990); *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1576 (Fed.Cir. 1989); *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1561 (Fed. Cir.1988); *Chore–Time Equip., Inc. v. Cumberland Corp.,* 713 F.2d 774, 778–79 (Fed.Cir. 1983). With these standards in mind, the court turns to consideration of Bremer's motion for summary judgment.

### B. Repair versus Reconstruction

The first issue to be decided by the court in considering Bremer's motion for summary judgment concerns the difference between "repair" and "reconstruction" of a combination patent. Bremer asserts the sweeping proposition that replacement of less than all of the parts of a '746 roll-up tarp unit constitutes legally permissible repair. Wahpeton, however, alleges that Bremer's actions amount to "reconstruction" and thus infringes the '746 patent.

■ The law is clear that the owner of a patented device has the right to repair that device, but that the owner does not have the right to reconstruct that device. *See generally Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 338–46, 81 S.Ct. 599, 600–05, 5 L.Ed.2d 592 (1961) (*"Aro I"*).

Although statement of this rule of law is easily made, distinguishing between the two concepts is more easily said than done. *See Mallinckrodt, Inc. v. Medipart, Inc.,* 976 F.2d 700, 709 (Fed.Cir.1992).[8]

The seminal Supreme Court decision on the subject remains its opinion in *Aro I.* In *Aro I,* the plaintiff was a manufacturer of automobile convertible tops, and the combination patent at issue consisted of the metal framework, mounting hardware, tonneau, and fabric covering. *Id.* at 339 n. 2, 81 S.Ct. at 601 n. 2. The defendant was in the business of replacing the fabric when it became worn. Holding that this replacement constituted permissible repair, rather than reconstruction, the Court stated:

> [R]econstruction of a patented entity, comprised of unpatented elements, is limited to such a true reconstruction of the entity as to in fact make a whole new article, after the entity, viewed as a whole, has become spent. In order to call the monopoly, conferred by the patent grant, into play for a second time, it must, indeed, be a second creation of the patented entity. Mere replacement of individual unpatented parts, one at a time, whether of the same part repeatedly or different parts successively, is no more than the lawful right of the owner to repair his property.

*Id.* at 346, 81 S.Ct. at 604 (quotations and citations omitted).

The Court further indicated that in analyzing whether an act of reconditioning rises to

---

**8.** As one commentator on the subject points out:

> In many instances, it is rather difficult to draw a line of distinction between *permissible repair* and *non-permissible reconstruction.* The distinction between repair and reconstruction, while clearly defined at the extreme ends, presents a problem of factual determination at the boundary where legitimate repair ends and illegitimate repair begins. Repair may be said to be the restoration to a sound, good or complete state after decay, injury, dilapidation, deterioration, wear or partial destruction. Reconstruction is the act of rebuilding. While absolute definitions serve to point out that, on the one hand, *repair implies correction* which may be due to the temporary nature of a machine, article or the like, and *reconstruction implies a creation* of a new life or capacity, in the final analysis each case must be decided on its own factual situation. It is impractical, as

> well as unwise, to attempt to lay down any rigid rule on this subject owing to the number and infinite variety of patented inventions. Each case, as it arises, must be decided in light of all the facts and circumstances as presented and with an intelligent comprehension of the scope, nature, and purpose of the patented invention and the fair and reasonable intention of the parties. Having clearly in mind the specification and claims of the patent, together with the condition of decay, destruction, etc., of the patented machine, article, or the like, the question whether its restoration to a sound state was legitimate repair, or substantial reproduction of the patented invention, should be determined less by technical definitions and technical rules than by the exercise of sound common sense and intelligent judgment.

> 6 Ernest B. Lipscomb III, *Lipscomb's Walker on Patents* § 22.9, 438–39 (3d ed. 1984).

the level of reconstruction, the essential or nonessential nature of the replaced parts is of no consequence:

> No element, not itself patented, that constitutes one of the elements of a combination patent is entitled to patent monopoly, however essential it may be to the patented combination and no matter how costly or difficult replacement may be. While there is language in some lower court opinions indicating that "repair" or "reconstruction" depends on a number of factors, it is significant that each of the three cases of this Court, cited for that proposition, holds that a license to use a patented combination includes the right "to preserve its fitness for use so far as it may be affected by wear or breakage." We hold that maintenance of the "use of the whole" of the patented combination through replacement of a spent, unpatented element does not constitute reconstruction.

*Id.* at 345–46, 81 S.Ct. at 604 (citations omitted).

Thus, the Supreme Court has taken an "an expansive view of conduct that constitutes permissible repair of a patented combination of unpatented elements." *Sage Prods., Inc. v. Devon Indus., Inc.,* 45 F.3d 1575, 1578 (Fed.Cir.1995). "The Court has thus 'eschewed the suggestion that the legal distinction between 'reconstruction' and 'repair' should be affected by whether the element of the combination that has been replaced is an 'essential' or 'distinguishing' part of the invention.'" *Id.* at 1578 (quoting *Dawson Chem. Co. v. Rohm & Haas Co.,* 448 U.S. 176, 217, 100 S.Ct. 2601, 2624, 65 L.Ed.2d 696 (1980)).

The Federal Circuit Court of Appeals has "consistently applied this broad interpretation of the doctrine." *Sage Prods., Inc.,* 45 F.3d at 1578; *See FMC Corp. v. Up–Right, Inc.,* 21 F.3d 1073, 1078 (Fed.Cir.1994); *Everpure, Inc. v. Cuno, Inc.,* 875 F.2d 300, 303 (Fed.Cir.1989); *Porter v. Farmers Supply Serv., Inc.,* 790 F.2d 882, 885–86 (Fed.Cir. 1986). The Federal Circuit, however, has avoided the temptation to impose a bright-line rule because:

> It is impracticable, as well as unwise, to attempt to lay down any rule on this subject, owing to the number and infinite variety of patented inventions. Each case, as it arises, must be decided in the light of all the facts and circumstances presented, and with an intelligent comprehension of the scope, nature, and purpose of the patented invention, and the fair and reasonable intention of the parties. Having clearly in mind the specification and claims of the patent, together with the condition of decay or destruction of the patented device or machine, the question whether its restoration to a sound state was legitimate repair, or a substantial reconstruction or reproduction of the patented invention, should be determined less by definitions or technical rules than by the exercise of sound common sense and an intelligent judgment.

*FMC Corp.,* 21 F.3d at 1079 (quoting *Goodyear Shoe Machinery Co. v. Jackson,* 112 F. 146, 150 (1st Cir.1901)).

■ The difficulty the court has in addressing this issue here lies in the fact that Bremer has framed the issue in such a manner that it requires the court to declare how much repair to a '746 roll-up tarp unit may be made at a single point in time before such actions would constitute reconstruction of a "spent" '746 roll-up tarp. In essence, Bremer requests the court to lay down a bright-line rule that anything less than complete replacement of all parts of a combination patent constitutes repair instead or reconstruction. The court cannot state in the abstract, as a matter of law, what level of repairs may be done to a '746 roll-up patent before the threshold between repair and reconstruction has been breached.[9] Yet, this is

9. Even if the court were able to divine the precise point between repair and reconstruction on a '746 patent unit, such resolution would still leave unanswered the questions of whether any of Bremer's repair activities were directed to infringing units and whether such conduct constituted contributory infringement under 35 U.S.C. § 271(c). *See generally Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 488, 84 S.Ct. 1526, 1533, 12 L.Ed.2d 457 (1964) (*"Aro II"*) (holding that section 271(c) "require[s] a showing that the alleged contributory

precisely what Bremer is requesting of the court on this portion of his motion for summary judgment. Bremer seeks the court to declare that it may replace all but one unidentified part of the '746 roll-up tarp without such action constituting forbidden reconstruction. The court is unaware of any precedent, and Bremer has pointed the court to none, where a court has made such a sweeping declaration. Typically, the question is whether replacement of a single part constitutes repair or reconstruction. *See Sage Prods., Inc.*, 45 F.3d 1575, 1578 (holding that replacement of unpatented disposable inner container used in hospital waste disposal system constituted repair); *Porter v. Farmers Supply Serv., Inc.*, 790 F.2d 882, 886 (Fed. Cir.1986) (holding that replacement of worn, unpatented harvester disks in a tomato harvester constituted repair); *Lummus Indus., Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 272 (Fed.Cir.1988) (affirming jury verdict that replacement of unpatented reel constituted reconstruction). The closest court precedent the court has been able to locate involving multiple part replacement is the Federal Circuit's decision in *Dana Corp. v. American Precision Co.*, 827 F.2d 755 (Fed.Cir.1987). In that case, the plaintiffs sold patented truck clutches, and the defendants sold replacement parts for the clutches to rebuilders. In *Dana Corp.*, the court held that replacement of worn out clutch parts, where no more than four parts of the clutch were new, constituted permissible repair. *Id.* at 759. Here, by contrast, the court is asked to declare in the abstract when the replacement of unidentified parts meets the threshold for reconstruction. Other than the eight totally built '746 roll-up tarps that Bremer constructed for farm grain wagons, the court is completely in the dark as to what specific actions Bremer has taken toward repairing/reconstructing any specific roll-up unit, and what the condition of any roll-up unit was prior to Bremer's actions. Therefore, the court concludes that it cannot grant this

portion of Bremer's motion because any determination of whether a patented '746 roll-up tarp has been become spent must be made by reference to the physical condition of the roll-up tarp taken as a whole, and not on some bright-line test. *See generally FMC Corp.*, 21 F.3d 1073, 1078–79.

## C. Sale to Svartoien

Bremer has also moved for partial summary judgment that its sale to Marc Svartoien of a kit of all of the parts necessary to create a '746 roll-up tarp unit did not constitute infringement of the '746 patent. Here, Bremer raises two issues. First, Bremer argues that because Svartoien was an investigator for Wahpeton, his ordering of the kit constituted authorization for Bremer to sell the package to Svartoien. Second, Bremer contends that because the sale was for the parts necessary to construct a '746 roll-up tarp unit and not an assembled '746 unit, that the sale does not constitute infringement. The court will consider each of these contentions in turn.

### 1. Agency Theory

█ In support of his theory that Svartoien's order of the kit of parts was an implicit authorization for him to produce the kit, Bremer relies on Judge Hansen's decision [10] in *Olan Mills, Inc. v. Linn Photo Co.*, 795 F.Supp. 1423 (N.D.Iowa 1991), *rev'd*, 23 F.3d 1345 (8th Cir.1994).[11] In *Olan Mills, Inc.*, a copyright infringement case, the plaintiff hired a private investigator to conduct an investigation into defendant's alleged infringing activities. *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1347 (8th Cir.1994). As part of the investigation, the investigator ordered reproductions of copyrighted photographs from defendant. *Id.* Judge Hansen took the view advanced by Bremer in this case that plaintiff's authorizing of the investigator to order the reprints

infringer knew that the combination for which his component was especially designed was both patented and infringing.")

10. After his October 10, 1991, decision in *Olan Mills*, Judge Hansen was elevated to the Eighth Circuit Court of Appeals on November 18, 1991.

11. Bremer was unaware of the Eighth Circuit's decision in *Olan Mills, Inc.* at the time he filed his motion, the *Olan Mills, Inc.* decision coming only nine days before. Upon learning of the Eighth Circuit's decision, Bremer provided the court with timely notice of it.

constituted a waiver of its copyright. *Id.* at 1348 n. 1. However, in rejecting this assessment the Eighth Circuit stated:

The scenario in this case is not different from investigative schemes that have been upheld in other copyright enforcement cases in this and in other circuits. *See, e.g., RCA/Ariola Int'l Inc. v. Thomas & Grayston Co.,* 845 F.2d 773 (8th Cir.1988); *RCA Records v. All–Fast Sys. Inc.,* 594 F.Supp. 335 (S.D.N.Y.1984). The investigator in this case merely approached Linn Photo in a conventional manner and offered Linn Photo an opportunity to infringe upon four clearly marked copyrights. Olan Mills did not authorize the investigator to validate Linn Photo's unlawful conduct. Indeed, the investigator's assignment was part of Olan Mills' attempt to stop Linn Photo's infringement. Accordingly, the copies made by Linn Photo at the request of the investigator were copyright violations.

*Id.* at 1348. The Eighth Circuit's reasoning applies with equal vigor in the context of patent law. The record is devoid of any evidence that Bremer requested that Svartoien waive Wahpeton's patent rights in the '746 patent. Indeed, the record is completely devoid of any discussion about Wahpeton's patent rights in the '746 patent. Wahpeton's intent here was to investigate Bremer's actions, not to validate Bremer's allegedly infringing conduct. Therefore, finding no basis in law to grant this segment of Wahpeton's motion, it shall be denied.

### 2. Sale of the Kit

■ Bremer also asserts that by selling all the parts necessary to construct a '746 roll-up tarp unit in unassembled kit form to Svartoien, he has not infringed the '746 patent. Here, Bremer relies on the Supreme Court's decision in *Deepsouth Packing Co. v. Laitram,* 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972), *superseded by statute,* 35 U.S.C. § 271(f) (1985). In *Deepsouth Packing Co.,* the Supreme Court held that a manufacturer in the United States of parts for a patented shrimp deveining machine which were to be sold outside the United States for assembly and use outside the United States did not constitute infringement under 35

U.S.C. § 271(a). *Id.* at 527, 92 S.Ct. at 1706. First, unlike the situation in *Deepsouth Packing Co.,* in which the petitioner was seeking to make the parts to shrimp deveining equipment and ship them overseas for assembly and use abroad, Bremer was selling all the parts in a kit to Svartoien for assembly and use in the United States. The holding of *Deepsouth Packing Co.* was subsequently superseded by the passage of 35 U.S.C. § 271(f). Furthermore, the Supreme Court clearly stated in *Deepsouth Packing Co.* that "if Deepsouth's conduct were intended to lead to the use of patented deveiners inside the United States its production and sales activity would be subject of injunction as an induced or contributory infringement." *Id.* at 526, 92 S.Ct. at 1706. This is precisely what Bremer did when he sold the kit of parts to Svartoien. Therefore, this portion of Bremer's motion for summary judgment must also be denied.

### D. Validity of the Reissue Oath

■ Finally, Bremer asserts that claims 14 through 32 of the '746 patent are invalid due to a defective reissue oath. "Reissue is essentially a reprosecution of all claims." *Hewlett–Packard Co. v. Bausch & Lomb Inc.,* 882 F.2d 1556, 1564 (Fed.Cir.1989), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1031 (1990). The circumstances under which reissue is permitted are set forth in 35 U.S.C. § 251, which provides in pertinent part:

Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

35 U.S.C. § 251.

The Federal Circuit explained in *In re Wilder,* 736 F.2d 1516 (Fed.Cir.1984), *cert.*

*denied sub nom. Wilder v. Mossinghoff,* 469 U.S. 1209, 105 S.Ct. 1173, 84 L.Ed.2d 323 (1985):

> There are two distinct statutory requirements that a reissue oath or declaration must satisfy. First, it must state that the patent is defective or partly inoperative or invalid because of defects in the specification or drawing, or because the patentee has claimed more or less than he is entitled to. Second, the applicant must allege that the defective, inoperative, or invalid patent arose through error without deceptive intent.

*Id.* at 1518. Therefore, the required "error" of section 251 has two parts: First, an error in the patent, and, second, an error in conduct. *Hewlett–Packard Co.,* 882 F.2d at 1564.[12]

The Manual of Patent Examining Procedures explains the requirement that the reissue applicant explain an error in conduct:

> It is particularly important that the reissue oath or declaration specify in detail how the errors arose or occurred. "How" includes when and under what circumstances the errors arose or occurred. This means that the reissue oath or declaration must specify the manner in which "the errors" "arose or occurred." For example, the reissue oath or declaration must indicate when and the manner in which the reissue applicant became aware of the prior art or other information and of the error in the patent; such as, for example, through discovery of prior art or other information subsequent to issuance of patent, knowledge of prior art or other information before issuance of patent with significance being brought out by third party, through allegations made in litigation involving the patent, etc.

Manual of Patent Examining Procedures at § 1414.03.

Bremer asserts that the reissue declaration of John J. Feldhaus, the attorney who drafted the original patent application, fails to meet the error in conduct portion of the test. However, it is the patent applicant, not the drafting attorney who must satisfy the reissue oath requirements. *See* 37 C.F.R. § 1.175(a).[13]

Feldhaus stated in his declaration that he unintentionally made the scope of the patent too narrow. Similarly, both applicants, the inventors William J. Shorma and Jerry R. Dimmer, stated in their declarations that the error resulted from their attorney's failure to understand the scope of their invention. "Failure of the attorney to claim the invention sufficiently broadly is 'one of the most common sources of defects.'" *Scripps Clinic and Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1575 (Fed.Cir.1991) (quoting *In re Wilder,* 736 F.2d at 1519). In *Genentech, Inc.,* the reissue applicant filed two reissue declarations by the attorneys responsible for the original patent prosecution. Each declaration stated that the errors were caused because the attorneys "did not fully appreciate the nature and extent of [the] discovery" and "did not fully appreciate the claims of the type sought by reissue were possible."

---

12. 37 C.F.R. § 1.175(a) requires that the reissue declaration "[p]articularly specify[] the errors relied upon, and how they arose or occurred."

13. Section 1.175, 37 C.F.R., provides that:
(a) Applicants for reissue, in addition to complying with the requirements of § 1.63, must also file with their applications a statement under oath or declaration as follows:
(1) When the applicant verily believes the original patent to be wholly or partly inoperative or invalid, stating such belief and the reasons why.
(2) When it is claimed that such patent is so inoperative or invalid "by reason of a defective specification or drawing," particularly specifying such defects.
(3) When it is claimed that such patent is inoperative or invalid "by reason of the patentee claiming more or less than he had the right to claim in the patent," distinctly specifying the excess or insufficiency in the claims.
(4) [Reserved]
(5) Particularly specifying the errors relied upon, and how they arose or occurred.
(6) Stating that said errors arose "without any deceptive intention" on the part of the applicant.
(7) Acknowledging the duty to disclose to the Office all information known to applicants to be material to patentability as defined in § 1.56.
(b) Corroborating affidavits or declarations of others may be filed and the examiner may, in any case, require additional information or affidavits or declarations concerning the application for reissue and its object.

*Scripps Clinic and Research Found. v. Genentech, Inc.,* 707 F.Supp. 1547, 1558–59 (N.D.Cal.1989), *aff'd,* 927 F.2d 1565 (Fed.Cir. 1991). Here, similarly, the declarations of the inventors, the error was "based on a failure of the attorney drafting the claims to understand the scope of the invention." Shorma declaration at 3; Dimmer declaration at 4.

Applying these principles to the instant case, the court concludes that Bremer has failed to establish patent invalidity due to insufficient specification of the reasons for error in conduct.[14] Because there is no evidence of intent to deceive and the reissue application was sufficiently detailed, summary judgment motion is not appropriate on Bremer's reissue claim.

## IV. CONCLUSION

Bremer's Motion for Summary Judgment and Partial Summary Judgment shall be denied in its entirety on the following grounds: that the court is unable to ascertain whether replacement of less than all the parts of a '746 roll-up tarp constitute legally permissible repair and the court declines Bremer's invitation to adopt a bright-line test for determining when permissible repair of a '746 roll-up unit becomes impermissible reconstruction; that the sale of parts to Svartoien was not an authorized sale by Wahpeton of its '746 patent; that the sale of the kit of parts to Svartoien was an infringing act;

and, that the reissue patent oath was not defective.

**IT IS SO ORDERED.**

**AMENDMENT TO THIS COURT'S MARCH 30TH ORDER REGARDING MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT TO ADD A CERTIFICATION FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

This matter comes before the court pursuant to Defendant's Motion To Amend Its Order Of March 28, [sic] 1995 And To Certify Said Order For Immediate Appeal (# 77) and brief in support thereof filed April 25, 1995; Plaintiffs' Memorandum In Resistance To Defendant's Motion To Amend Its Order Of March 30, 1995 And To Certify For Immediate Appeal (# 82) filed May 8, 1995; and Defendant's Reply To Plaintiffs' Memorandum In Resistance To Defendant's Motion To Amend Its Order Of March 30, 1995 And To Certify For Immediate Appeal (# 83) filed May 11, 1995. The court, having reviewed the above motions, while not free from doubt, grants Defendant's motion. This court's March 30, 1995 Order Regarding Motion for Summary Judgment and Partial Summary Judgment is modified and amended to include the following:

Pursuant to 28 U.S.C. § 1292(b), this court is of the opinion that its March 30, 1995 Order Regarding Motion for Summary Judgment and Partial Summary

---

14. Bremer's reliance on the unpublished, district court decision in *Alcon Labs., Inc. v. Allergan, Inc.,* Civ. No. 4–88–333–E, 1990 WL 267418 (N.D.Tex. Aug. 28, 1990), is misplaced. In *Alcon,* the inventors submitted a reissue declaration in which they stated that the errors at issue "occurred as a result of oversight in the preparation and review of the patent application. These errors arose inadvertently without any deceptive intention on my part." *Id.,* 1990 WL 267418 at *12. At trial, it became apparent that the error was the result of inadvertent oversight on the part of the attorney who drafted the patent. The court concluded that the declaration did not make an adequate showing of how the error occurred: "The mere conclusion that the error was made through oversight in drafting by the patent attorney, without more, falls short of what the regulation requires." *Id.* The declarations here are considerably more detailed than the

declaration in *Alcon.* Both inventors and applicants declared:

That the error in drafting the claims too narrowly as set forth in my earlier reissue declaration was apparently based on a failure of the attorney drafting the claims to understand the scope of the invention. Specifically, I do not believe that the attorney appreciated that it was not necessary to specify a particular type of/or location for the latch or extension plate used in the construction, or that he appreciated the function of the crank means for achieving tension in the tarp or the function of the resilient means as it cooperates with the crank means.

Shorma declaration at 3; Dimmer declaration at 4. Thus, unlike the situation in *Alcon,* the asserted error here goes beyond "inadvertent oversight" on the part of the attorney who drafted the patent.

Judgment "involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

**IT IS SO ORDERED.**