Sandvik AKTIEBOLAG, Plaintiff,

v.

E.J. COMPANY, et al., Defendants.

No. 3–94–1076.

United States District Court,
M.D. Tennessee,
Nashville Division.

Jan. 22, 1996.

Ira Clinton Waddey, Jr., Waddey & Patterson, Nashville, TN, for Sandvik Aktiebolag.

Hal D. Hardin, Nashville, TN, Robert E. Pitts, Pitts & Brittian, Knoxville, TN, for E.J. Company, Vira Hayes, Robert Hayes.

## MEMORANDUM

ECHOLS, District Judge.

Pending before the Court are Defendants' Motion for Summary Judgment and for Attorney Fees, to which Plaintiff has responded, and Plaintiff's Motion for Summary Judgment, to which Defendant has responded. Plaintiff filed this action, alleging that (1) Defendants infringed upon its patent rights by replacing the carbide tip of the drill on which it held a patent, and (2) Defendants engaged in unfair competition in marketing the drill. Defendants filed their Motion for Summary Judgment, arguing that the replacement of the carbide tip is merely the repair of an unpatented part of a patented product and, therefore, does not constitute infringement. Plaintiff responded, contending that Defendants' actions constitute an impermissible reconstruction of the drill rather than a mere repair. Plaintiff has also filed a Motion for Summary Judgment, arguing that Defendants' actions clearly constitute reconstruction of its patented drill, thereby infringing upon Plaintiff's patent. For the reasons stated herein, the Court finds that Defendants' actions constitute repair of the drill and thus do not constitute patent infringement. With respect to Plaintiff's claim of unfair competition, the Court finds that Defendants' Motion is premature as the parties have not had adequate time to conduct discovery on this issue. Finally, the Court holds that granting attorneys' fees to Defendants is inappropriate because Plaintiff's claim is not clearly baseless such that this case should be considered exceptional. Accordingly, Defendants' Motion for Summary Judgment is hereby GRANTED IN PART and DENIED IN PART, Defendants' Motion for Attorneys' Fees is hereby DENIED, and Plaintiff's Motion for Summary Judgment is hereby DENIED.

Plaintiff filed this suit asserting infringement of U.S. Letters Patent No. 4,222,690 and U.S. Letters Patent No. 4,381,162, as well as unfair competition. Plaintiff is a licensee of the patents held on the drill. Both of the patents-in-suit generally relate to a drill made up of two different materials, medium carbon steel for the shank and carbide for the cutting tip. The carbide tip of the drill is soldered in place using a hard solder having a relatively high melting point. The drill is described in both patents as follows:

> A drill comprising a pair of cutting edges extending from the center of rotation of the drill symmetrically with respect to the center and curved outwardly away from the direction of rotation of the drill with a greater curvature in the center portion than in the outer peripheral portion of the drill when seen in a bottom view. The cutting edge is formed, close to its starting end, with a rake face having a rake angle approximately to zero to enable the starting end portion of the edge to cut a workpiece with greater ease.

(Docket Entry No. 18, Exhibits A & B).

It is Plaintiff's contention that Defendants' actions in retipping the drills manufactured by Plaintiff constitute an infringement of these patents and unfair competition. The commercial configuration of this drill consists of a carbide tip insert that is mounted in a slot in the steel shank of the drill and bonded to the shank by brazing. The carbide tip of the drill generally wears out long before the steel shank; therefore, it must be sharpened. However, at some point, the carbide tip may become too badly worn or damaged to permit resharpening. Various companies, including Defendant E.J. Company, offer services which include retipping of drills. In the retipping process, the distal end of the drill is heated using an acetylene torch to melt the brazing material, and the worn tip insert is removed from the shank. A replacement tip

insert is then secured in the slot of the original drill shank by brazing. After the drill has cooled, the tip insert is ground to the proper diameter utilizing a conventional grinding machine. Defendants assert that they then shape the tip using the sharpening instructions published by Plaintiff.

In their cross-motions for summary judgment, both parties agree that no material fact is in dispute, and thus, this case is ripe for summary judgment. The parties do not dispute the facts relating to Defendants' actions in retipping the drills manufactured by Plaintiff. Rather, the parties' central dispute is whether Defendants' actions constitute a permissible repair and replacement of an unpatented element of the patented product or an impermissible reconstruction of the patented product.

In ruling on a motion for summary judgment, this Court must construe the evidence produced in the light most favorable to the non-moving party, drawing all justifiable inferences in his or her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). A party may obtain summary judgment if the evidentiary material on file shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n. 4 (6th Cir.1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact which is disputed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. If so, summary judgment dismissal is inappropriate.

■ Defendants assert that their actions constitute a repair of an unpatented part (the carbide tip) of a patented product (the drill). Conversely, Plaintiff views the patented drill as a single entity, and Defendants' actions in replacing the carbide tip constitute the impermissible reconstruction of the drill. The Supreme Court discussed the distinction between the lawful repair and unlawful reconstruction in *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 81 S.Ct. 599,

5 L.Ed.2d 592 (1961) ("*Aro I*"). In *Aro I*, the plaintiff, which owned a patent on a convertible folding top that included a flexible top fabric, supporting structures, and a mechanism by which the fabric sealed against the side of the body of the car, brought an action for patent infringement against the defendant companies that manufactured and sold replacement fabrics for convertibles equipped with the plaintiff's patented device. The Court recognized it is well settled in patent law "that the combination patent covers only the totality of the elements in the claim and that no element, separately viewed, is within the grant." *Id.* at 344, 81 S.Ct. at 603 (citations omitted). Therefore, it held that the defendants' actions in manufacturing and selling replacement fabrics did not constitute patent infringement because the plaintiff held a patent on the combination of elements, and thus, the patent was not infringed by the replacement of an individual, unpatented part. *Id.* at 345, 81 S.Ct. at 604.

■ The *Aro I* Court further stated that "[n]o element, not itself separately patented, that constitutes one of the elements of a combination patent is entitled to patent monopoly, however essential it may be to the patented combination and no matter how costly or difficult replacement may be." *Id.* See also *Mercoid Corp. v. Minneapolis–Honeywell Regulator Co.*, 320 U.S. 680, 684, 64 S.Ct. 278, 280, 88 L.Ed. 396 (1944). Thus, the Court held "that maintenance of the 'use of the whole' of the patented combination through replacement of a spent, unpatented element does not constitute reconstruction." *Aro I*, 365 U.S. at 345, 81 S.Ct. at 604. Rather, reconstruction "is limited to such a true reconstruction of the entity as to 'in fact make a new article' after the entity, viewed as a whole, has become spent." *Id.* (citations omitted). Mere replacement of unpatented parts of a patented product is simply the lawful right of the owner to repair his property. *Id.*

Clearly, the Supreme Court has taken "an expansive view of conduct that constitutes permissible repair of a patented combination of unpatented elements." *Sage Prods. v. Devon Indus.*, 45 F.3d 1575, 1578 (Fed.Cir. 1995). "The Court has thus 'eschewed the

suggestion that the legal distinction between 'reconstruction' and 'repair' should be affected by whether the element of the combination that has been replaced is an 'essential' or 'distinguishing' part of the invention.'" *Id.* (quoting *Dawson Chem. Co. v. Rohm & Haas Co.,* 448 U.S. 176, 217, 100 S.Ct. 2601, 2624, 65 L.Ed.2d 696 (1980)).

In the present case, Plaintiff first contends that it is not the assignee of "combination patents." Rather, its patents protect only the carbide tip of the drill and not the entire drill, including the shank and the tip; therefore, Defendants have violated their patents by reconstructing the carbide tip in the same patented geometric form.

The language of the patents belie this contention. While admitting that the preambles of the patents are directed to the entire drill, Plaintiff asserts that the body of the patents refer to the carbide tip alone. The bodies of U.S. Patent Letters Nos. 4,222,690 and 4,381,162, however, refer to figures diagramming both the steel shank and the carbide tip of the drill. In fact, both patent letters state:

> The drill shown in FIGS. 1 to 4 includes tips 1, a shank 2, twisted grooves 3 and a conical end having a center point 11 at the apex of the cone and a pair of cutting edges 10 extending from the center point 11 symmetrically with respect to the center point 11. Each of the tips 1 is made for example from cemented carbide alloy in the form of a plate and attached to the conical end of the shank 2 by brazing, or by bolt as a throw-away piece. Instead of attaching the separate tips to the shank 2, the tips may be formed integrally with the shank.

(Docket Entry No. 18, Exhibits A & B). Thus, it is clear from the language of the patents that they are intended to include not only the carbide tip of the drill but also the steel shaft and the drill as a whole.

Next, Plaintiff asserts that the drill is a single entity, and thus, once the tip is worn such that it can no longer be sharpened, the drill as a whole is spent; therefore, Defendants' actions in retipping the drill constitute an impermissible reconstruction of the drill as a whole. Thus, Plaintiff is essentially

asserting that it does not hold a combination patent because the drill is not made up of a combination of parts. Conversely, Defendants maintain that the drill is made up of two separate parts—the carbide tip and the steel shaft—and thus, their actions in replacing the carbide tip of the patented drill constitute replacement of only one part of the drill, which is permissible repair. *See Porter v. Farmers Supply Serv.,* 790 F.2d 882, 886 (Fed.Cir.1986) (holding that replacement of a worn part in a patented combination constitutes repair rather than reconstruction).

In its attempt to characterize Defendants' actions as reconstruction rather than repair, Plaintiff urges that carbide is merely a material used to produce the drill rather than a particular part of the drill. To support its proposition that carbide is merely a material used to produce a single entity, Plaintiff highlights the fact that Defendants must use an acetylene torch producing heat of 1300 degrees Fahrenheit to remove the carbide tip. Thus, Plaintiff argues that the present case is distinguishable from those cases relied upon by Defendants for the proposition that replacement of an individual part constitutes repair. It is true that the cases relied upon by Defendants concern products with parts that are readily distinguishable and easily detachable. *See Aro I,* 365 U.S. 336, 81 S.Ct. 599 (convertible top consisting of the metal framework, mounting hardware, tonneau, and fabric covering); *Sage Prods.,* 45 F.3d 1575 (waste disposal system comprising an outer enclosure and a removable inner container); *King Instrument Corp. v. Otari Corp.,* 814 F.2d 1560 (Fed.Cir.1987) (automatic device for loading tape into closed cassettes); *Wahpeton Canvas Co. v. Bremer,* 893 F.Supp. 863 (N.D.Iowa 1995) (roll-up tarp unit consisting of a number of parts), *appeal denied,* 64 F.3d 671, 1995 WL 412841 (Fed.Cir.1995). As the Supreme Court noted in *Aro I,* however, the cost or difficulty of replacement has no bearing on the determination as to whether an action constitutes repair or reconstruction. *Aro I,* 365 U.S. at 345, 81 S.Ct. at 604.

In characterizing carbide as a material used to make up a single entity, one may analogize the carbide tip to an ingredient in a

recipe. After the recipe is complete, the ingredient no longer retains its original character. Unlike the recipe ingredient, however, the carbide tip does not mix with another substance to form a new metal alloy. Although it may be difficult to remove, it retains its original character and thus may be considered a part for purposes of determining whether Defendants' actions constitute repair or reconstruction. The Court's decision characterizing the carbide tip as a part is consistent with the Supreme Court's expansive view of conduct that constitutes permissible repair. *See Sage Prods.*, 45 F.3d at 1578. Accordingly, the Court finds that Plaintiff cannot sustain its claims of patent infringement.[1]

■ Plaintiff has asserted a second cause of action under 15 U.S.C. § 1125(a) for unfair competition. Plaintiff alleges that Defendants have unfairly competed by "manufacturing, selling and offering for sale a product that includes reconstructed cutting inserts which incorporate the patented cutting edge geometry of U.S. Patent Nos. 4,222,690 and 4,381,162." (Complaint, Docket Entry No. 1). To the extent that Plaintiff's claim of unfair competition is based on Defendants' actions in "reconstructing" the carbide tip of the drill, the Court's ruling today that Defendants' actions constitute permissible repair prohibit Plaintiff from asserting a claim of unfair competition.

■ In its Complaint, Plaintiff also alleges that Defendants have engaged in unfair competition because they have "caused and continues [sic] to cause adverse reaction by consumers and, on information and belief, have misled consumers as to the nature, characteristics, and qualities of their goods as equivalent to or readily substitutable for the original patented drills manufactured and sold by Plaintiff." (Complaint, Docket Entry No. 1). Defendants insist that this claim must be dismissed because Plaintiff has made no allegation as to misrepresentation in commercial advertising or interstate commerce as required by 15 U.S.C. § 1125(a)(1)(B). Plaintiff responds that with respect to the claim for unfair competition, Defendants' motion is premature. Plaintiff notes that discovery in this case has been limited to the issues of repair versus reconstruction and estoppel. Other than Defendant E.J. Company's advertisements that use Plaintiff's trademark, Plaintiff complains that it has had no opportunity to discover what Defendants have communicated to their customers that may create confusion as to the origin, sponsorship, or approval of Defendants' drills.

After a review of the filings submitted to the Court, it is apparent that the discovery in this case thus far has been limited to the issues of repair versus reconstruction and estoppel. Consequently, the Court must deny Defendants' Motion for Summary Judgment with regard to Plaintiff's claim of unfair competition to permit Plaintiff more time to discover information that may support its claim.

■ Finally, Defendants have moved for attorneys' fees under 35 U.S.C. § 285, which allows the district court to award attorneys' fees to the prevailing party in exceptional patent cases. The filing and maintaining of a patent infringement suit that the patentee knows or clearly should know is baseless constitutes grounds for declaring a case "exceptional" under 35 U.S.C. § 285. *Eltech Sys. Corp. v. PPG Indus.*, 903 F.2d 805, 810 (Fed.Cir.1990). Once the court finds a case to be "exceptional," it is within the court's discretion to award attorneys' fees to the prevailing party. *Id.* at 811.

■ The Court does not find the present case to be "exceptional" under 35 U.S.C. § 285. There is no evidence that Plaintiff knew that his present cause of action was baseless. Indeed, there is little precedent regarding the distinction between repair and reconstruction to guide the parties, as well as the courts. *See Wahpeton Canvas*, 893 F.Supp. at 869 (noting the difficulty of distinguishing between repair and reconstruction). In fact, the parties submitted no case addressing the issue before the Court regarding the distinction between an indistinguishable material element of a patented product

---

1. As the Court has found that Plaintiff cannot sustain its claims of patent infringement, any claim dependent upon the independent claims of patent infringement must also be denied. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed.Cir.1989).

and an unpatented part of a patented product. Accordingly, the Court cannot find Plaintiff's patent infringement claim to be "exceptional." Furthermore, even if the Court were to find Plaintiff's claim to be exceptional, the cases relied upon by Defendants in support of their Motion for Attorneys' Fees involve conduct evincing bad faith on the part of the patentee. *See Eltech Sys.,* 903 F.2d at 811 (discussing a myriad of abuses to the discovery process, including withholding relevant information); *Hughes v. Novi American, Inc.,* 724 F.2d 122 (Fed.Cir. 1984) (plaintiff gave false answers to interrogatories); *Loctite Corp. v. Fel–Pro, Inc.,* 667 F.2d 577 (7th Cir.1981) (plaintiff committed a number of discovery abuses including refusing to produce test reports to substantiate charges, concealing suspicion that test data was tainted, and impeding discovery). As there is no evidence of such conduct evincing bad faith on the part of Plaintiff in the present case, the Court can find no basis for awarding attorneys' fees under 35 U.S.C. § 285.

For the foregoing reasons, Defendants' Motion for Summary Judgment is hereby GRANTED IN PART and DENIED IN PART, Defendants' Motion for Attorneys' Fees is hereby DENIED, and Plaintiff's Motion for Summary Judgment is hereby DENIED. This case will proceed with Plaintiff's claim of unfair competition under 15 U.S.C. § 1125.