**WAHPETON CANVAS CO., South Dakota, Inc., a South Dakota Corporation, and Primewood, Inc., a North Dakota Corporation, Plaintiffs,**

v.

**Donald A. BREMER, and Donald W. Bremer, individuals doing business as Sioux City Tarp Manufacturing and Canvas Repair, Defendants.**

No. C 93–4093–MWB.

United States District Court,
N.D. Iowa,
Western Division.

March 28, 1997.

Lester J. Savit, Jones Day Reavis & Pogue, Chicago, IL, A.J. Stoik, Klass, Hanks, Stoos, Stoik & Villone, Sioux City, IA, for Wahpeton Canvas Co.

Jeffery D. Harty, Daniel J. Cosgrove, Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, IA, for Bremer.

**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**

BENNETT, District Judge.

TABLE OF CONTENTS

I. INTRODUCTION .................................................1349

II. STANDARDS FOR SUMMARY JUDGMENT ..............................1350

III. FINDINGS OF FACT............................................1353
 A. Undisputed Facts ........................................1353
 B. Disputed Facts ..........................................1354

IV. LEGAL ANALYSIS .............................................1355
 A. Patent Validity.........................................1355
 1. Defective Reissue Oath ..............................1356
 2. Invalidity in light of prior art.....................1357
 a. Anticipation of the '746 reissue patent............1357
 b. Obviousness of the '746 patent ....................1358
 3. Indefiniteness of the '746 reissue patent ...........1359
 B. Infringement ...........................................1361
 C. Antitrust Counterclaim .................................1361
 1. "Attempt to monopolize".............................1362
 2. The Kodak decision .................................1363
 3. Bremer's monopolization claim ......................1365
 a. Anticompetitive conduct............................1365
 b. Intent to monopolize...............................1367

V. CONCLUSION .................................................1367

---

This is a patent infringement lawsuit involving a patent for roll-up tarp systems for covering truck trailers. The alleged infringers asserts an antitrust counterclaim. The patent holder has moved, in separate motions, for partial summary judgment as to the validity of its patent, infringement of the patent by the defendants as the result of sales of complete tarp units, complete repair kits, and the sale of other repair and replacement parts and service, and the insufficiency of the defendants' antitrust counterclaim.

## I. INTRODUCTION

This lawsuit involves alleged infringement by defendant Donald A. Bremer d/b/a Sioux City Tarp Manufacturing and Canvas Repair ("Bremer") of a patent for a roll-up tarp for truck trailers. The patent is owned by plaintiff Primewood, Inc., and assigned to plaintiff Wahpeton Canvas Co., South Dakota, Inc. (collectively "Wahpeton"). On October 20, 1993, Wahpeton filed suit against Bremer alleging that Bremer's making, using, and selling of a roll-up tarp infringed the patent in suit. On April 7, 1994, Bremer filed his second amended answer and a counterclaim

in which he alleges violations of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2. Specifically, Bremer alleges in his counterclaim that Wahpeton has instructed its authorized dealers not to sell repair parts to Bremer and others similarly situated. Second Am. Answer and Countercl. at ¶ 14. Bremer asserts that by engaging in this course of conduct-refusing to sell repair parts-Wahpeton and its authorized dealers have entered into an illegal tying arrangement and have attempted to monopolize the secondary market for the sale of repair services and repair parts in violation of sections 1 and 2 of the Sherman Antitrust Act. *Id.* at ¶ 18. On September 18, 1996, Wahpeton filed an amended complaint naming Donald W. Bremer as an additional defendant. Donald W. Bremer answered that amended complaint on October 3, 1996.[1]

On March 30, 1995, this court denied Bremer's motion for summary judgment and partial summary judgment. *See Wahpeton Canvas Co. v. Bremer,* 893 F.Supp. 863 (N.D.Iowa 1995), *appeal denied,* 64 F.3d 671 (Fed.Cir.1995). It is now Wahpeton's turn to seek summary judgment or partial summary judgment. This matter is presently before the court on Wahpeton's separate motions for partial summary judgment on its claim of infringement, for partial summary judgment on the validity of its patent, thus attempting to remove Bremer's affirmative defense of invalidity of the patent in suit, and for summary judgment on Bremer's antitrust counterclaim. Bremer has filed timely resistances to Wahpeton's motions.[2] Bremer has also filed supplements to his resistances by leave of the court. In addition, Wahpeton has filed various reply memoranda. The motions are now deemed fully submitted.[3]

The court will consider first the standards applicable to motions for summary judgment, then consider the undisputed and disputed facts as asserted by the parties. Finally, the court will make its legal analysis of the issues raised by Wahpeton's various motions for summary judgment and Bremer's resistances.

## II. STANDARDS FOR SUMMARY JUDGMENT

Because the standards for summary judgment are pertinent to both the factual background for the present motions and the legal analysis of those motions, the court turns first to those standards as articulated by the Federal Circuit Court of Appeals, the court whose precedent is controlling in this patent case. "Summary judgment is appropriate in a patent case, as in other cases...." *Nike, Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, 646 (Fed.Cir.1994); *Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575 (Fed.Cir. 1994) ("The grant of summary judgment [in a patent case] is appropriate where the standards set forth in Rule 56(c) are satisfied."); *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.,* 984 F.2d 1182, 1190 (Fed.Cir.1993); *Continental Can Co. U.S.A., Inc. v. Monsanto Co.,* 948 F.2d 1264, 1265 (Fed.Cir.1991) ("Summary judgment is as available in patent cases as in other areas of litigation."); *Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 795 (Fed.Cir.1990) ("As in other cases, the grant of summary judgment under *Fed.R.Civ.P.* 56, is appropriate in a patent case where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.") (footnote omitted); *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.,* 911 F.2d 670, 672 (Fed.Cir.1990); *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1576 (Fed.Cir.1989); *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1561 (Fed.Cir.1988); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 835 (Fed.Cir.

---

**1.** The defendants will still be referred to collectively, in the masculine singular, as "Bremer." When necessary or appropriate, however, individuals will be referred to as "Donald A. Bremer" or "Donald W. Bremer."

**2.** Although defendant Bremer was for a time defending this action *pro se,* both parties are currently represented by counsel. Plaintiff Wahpeton is represented by counsel Lester J. Savit of

Jones Day Reavis & Pogue, Chicago, Illinois, and A.J. Stoik of Klass, Hanks, Stoos, Stoik & Villone, Sioux City, Iowa. Defendant Bremer is represented by counsel Jeffery D. Harty and Daniel J. Cosgrove of Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, Iowa.

**3.** Neither party requested oral arguments on the present motions and the court has not found that oral arguments were necessary.

1984); *Chore–Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 778–79 (Fed.Cir. 1983).

The Supreme Court has established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1560 (Fed.Cir.1995) ("The purpose of summary judgment is to avoid an unnecessary trial, by enabling an expeditious procedure whereby, for issues on which there is no material factual dispute, the court can decide the controversy by applying the law to the undisputed facts," citing *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512); *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed.Cir.1991). Rule 56 "is a vehicle for the convenience of the parties and courts, for use when the circumstances warrant; but is not a substitute for trial when decision of the controversy requires resolution of disputed factual issues." *Glaverbel,* 45 F.3d at 1560 (citing *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2554–55).

■ Wahpeton has moved for summary judgment not only on its own claim of infringement, but on Bremer's counterclaim. Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment on claims on which the movant is either the claimant or the defending party, in pertinent part, as follows:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1274 (Fed.Cir. 1995); *Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1536 (Fed.Cir.1995). Thus, in a patent case, in order for the court to grant summary judgment, "there must . . . be no genuine issue of material fact, the burden of proof of an issue must be correctly allocated, and all pertinent factors must be considered." *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 772 (Fed.Cir.1995) (quoting *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039 (Fed.Cir.1992)); *Nike, Inc.,* 43 F.3d at 646 ("Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.").

A court considering a motion for summary judgment must view all of the facts in the light most favorable to the nonmoving party, and give the non-movant the benefit of all reasonable inferences that can be drawn from the facts. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold,*

*Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Gasser Chair,* 60 F.3d at 772 (the district court must "view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in its favor, ... and ... resolve all doubt over factual issues in favor of the party opposing summary judgment," quoting *SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1116 (Fed.Cir.1985) (in banc)); *Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d at 1274; *Comair Rotron, Inc.,* 49 F.3d at 1536 ("The evidence provided by the nonmovant is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor."); *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,* 997 F.2d 1444, 1450 (Fed.Cir.1993).

The party seeking summary judgment " 'always bears the initial responsibility of informing the district court of the basis for its motion.' " *Glaverbel,* 45 F.3d at 1560 (quoting *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553); *Conroy,* 14 F.3d at 1575; *Copelands' Enters., Inc. v. CNV, Inc.,* 945 F.2d 1563, 1565 (Fed.Cir.1991). The moving party must " 'identify[ ] those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.' " *Glaverbel,* 45 F.3d at 1560 (quoting *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553, which in turn cites *Fed.R.Civ.P.* 56(c)); *Conroy,* 14 F.3d at 1575 ("The moving party, however, need not produce evidence showing the absence of a genuine issue of material fact but rather discharge[s] its burden by showing the district court that there is an absence of evidence to support the nonmoving party's case.").

In response, " 'the nonmoving party [must] go beyond the pleadings and by [its] own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a

genuine issue for trial." ' " *Glaverbel,* 45 F.3d at 1560 (quoting *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553). A material fact is one that may affect the decision, so that the finding of fact is relevant to the proceedings. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Tone Bros., Inc. v. Sysco Corp.,* 28 F.3d 1192, 1196 (Fed.Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1356, 131 L.Ed.2d 214 (1995); *KeyStone Retaining Wall,* 997 F.2d at 1449 ("A material fact is one that may affect the decision, whereby the finding of that fact is relevant and necessary to the proceedings," citing *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510). An issue of material fact is genuine if it has a real basis in the record. *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Stark v. Advanced Magnetics, Inc.,* 29 F.3d 1570, 1572 (Fed.Cir.1994) ("When material facts are in dispute summary adjudication may nonetheless be appropriate if, with all factual inferences drawn in favor of the non-movant, the movant would nonetheless be entitled to judgment as a matter of law."); *Tone Bros.,* 28 F.3d at 1196 ("The court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law."); *Continental Can,* 948 F.2d at 1265. The correct law must, of course, be applied, whether to undisputed facts or to disputed facts viewed favorably to the nonmovant. *Stark,* 29 F.3d at 1573.

When the movant's burden of establishing the lack of a genuine issue of material fact has been met "in facial terms," the nonmovant must point to "some evidence in the record sufficient to suggest that [the nonmovant's] view of the issue might be adopted by a reasonable factfinder." *Id.* at 1560–61.[4] "[S]ummary judgment may be granted when

---

4. On this point, the Eighth Circuit Court of Appeals has observed that, although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.' " *Metge v. Baehler,*

762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986).

no 'reasonable jury could return a verdict for the nonmoving party.' " *Nike, Inc.,* 43 F.3d at 646 (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510); *see also Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510 (The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."); *Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d at 1274 (also citing *Anderson* ); *Wolverine World Wide, Inc. v. Nike, Inc.,* 38 F.3d 1192, 1196 (Fed.Cir.1994); *Tone Bros.,* 28 F.3d at 1196 ("The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof."); *KeyStone Retaining Wall,* 997 F.2d at 1449 (sufficient evidence must be presented that a reasonable fact finder could decide the question in the nonmovant's favor).

 Finally, the Federal Circuit Court of Appeals has cautioned that "[a] district court should approach a motion for summary judgment on the fact issue of infringement with great care." *Cole v. Kimberly–Clark Corp.,* 102 F.3d 524, 528 (Fed.Cir.1996). Similarly, "in deciding a motion for summary judgment of invalidity the [heightened] burden of proof [of clear and convincing evidence] must be considered." *National Presto Indus., Inc. v. West Bend Co.,* 76 F.3d 1185, 1189 (Fed.Cir.1996).

With these standards in mind, the court will consider next the factual background, including disputed and undisputed facts, for Wahpeton's motions for summary judgment, then turn to the court's legal analysis of issues raised in the motions.

### III. FINDINGS OF FACT

#### A. Undisputed Facts

Some of the facts that this court found were undisputed in its disposition of the pre-

vious summary judgment motion are not in dispute here, either. Wahpeton is the assignee of United States Patent Re. 31,746 ("the '746 patent"), entitled "Roll–Up Tarp for Trailers." [5] The '746 patent is a reissue patent. The '746 patent pertains to roll-up trailer covers. One side edge of the cover is attached to a longitudinal upper edge of a trailer box and the other side, or free edge of the cover is associated with a roll tube. A universal joint connects the roll tube to a crank turnable from the ground to roll and unroll the cover. A latching means is employed to secure the cover in place. Securing the crank locks the cover in place. As the Federal Circuit has explained: ˙

> The latching means disclosed in the '746 patent is a plate mounted along and angularly depending from the entire upper edge of the truck box opposite that to which the cover is attached. Latching is accomplished by turning the crank counterclockwise to unroll the cover over the truck box and plate until the roll tube dangles below the plate, then continuing to turn the crank counterclockwise and rerolling the tube in the same direction to reroll the cover onto the tube and thus to draw the tube upwardly until it securely engages the underside of the plate and is wedged between the plate and the truck wall.

*Wahpeton Canvas Co. v. Frontier, Inc.,* 870 F.2d 1546, 1549 (Fed.Cir.1989).[6]

On November 27, 1984, a reissue patent for the '746 patent was issued by the United States Patent and Trademark Office. In its submissions for a reissue patent, the '746 patent's inventors, William J. Shorma and Jerry R. Dimmer, as well as their counsel, James P. Ryther, submitted declarations in support of the reissue. John J. Feldhaus, the attorney who drafted the original patent also submitted a declaration. In his declaration, Feldhaus states that he conducted the patent interview without the assistance of

---

5. Wahpeton sells the '746 roll-up tarps under its registered trademark SHUR–LOK. Wahpeton indicated at the hearing on the previous motion for summary judgment that it had sold approximately 150,000 '746 roll-up tarps.

6. Illustrations of the '746 patent appear in *Wahpeton Canvas Co.,* 870 F.2d at 1557, fig. 1–3.

Although the *Wahpeton Canvas Co.* case dealt with the original '746 patent and not the reissue '746 patent, the description of the device set forth above is equally applicable to the reissue '746 patent.

either the inventors or their attorney.[7] Shorma and Dimmer both state in their declarations that the error in the original patent resulted from the failure of attorney John J. Feldhaus to understand the scope of the invention.[8]

Bremer is in the business of selling tarps. Bremer's business also provides repair service and sells replacement parts for '746 roll-up tarps that were originally sold by Wahpeton or a Wahpeton authorized dealer. Wahpeton sells genuine parts to its regular customers, including Wilson Trailer in Sioux City, Iowa. In the past, Bremer has been able to secure replacement parts for '746 roll-up tarps from Wilson Trailer. Bremer maintains sufficient quantifies of parts in stock that his business could construct a complete '746 roll-up tarp. Bremer admits to having constructed eight to ten complete '746 roll-up tarps for farm grain wagons in the past.[9]

The court now finds, for the purposes of this summary judgment motion, that additional facts are undisputed. The validity of Wahpeton's '746 has been acknowledged in various proceedings resulting in consent decrees or jury verdicts. However, the Federal Circuit Court of Appeals was critical of the clarity of the drafting of the claims of the patent:

> Many of Wahpeton's claims are semantic mish-mash, containing terms not in the specification, adding numerous innocuous details differently labeled in dependent claims, and including the same structure

twice in a single claim by changing its label.

*Frontier, Inc.*, 870 F.2d at 1551.

As to Bremer's antitrust counterclaim, Wahpeton concedes that it has refused to sell replacement parts for '746 roll-up tarp systems to Bremer, but contends that it is perfectly appropriate for Wahpeton not to make such sales to a known infringer. Wahpeton has over one thousand customers for its roll-up tarp systems and does not demand of its customers a formal agreement not to sell parts or roll-up tarp systems. Nor does Wahpeton extract a service agreement from its customers. Thus, Wahpeton's sales of its tarp systems are unconditional.

### B. Disputed Facts

Bremer contends that there are genuine issues of material fact on each of the issues on which Wahpeton has moved for partial summary judgment. As to validity, Bremer contends that there is a genuine issue of material fact as to the effectiveness of the reissue declaration for the '746 patent, apparently contending that the declaration inadequately states "error in conduct," one of the elements required for reissuance of a patent. Bremer also contends that there are genuine issues of material fact as to whether prior art, both prior art disclosed to the patent examiner and not disclosed, in combination, made the '746 patent obvious. Finally, as to validity, Bremer contends that the comments of the Federal Circuit Court of Appeals quoted above, criticizing the drafting of the claims of the '746 patent, establish or gener-

---

7. The Feldhaus declaration is located at tab BB of Wahpeton's exhibits in resistance to Bremer's motion for summary judgment, the summary judgment motion this court has previously denied. In his declaration, Feldhaus declares, in pertinent part, that

> [t]his error arose without any deceptive intent and I believe this error arose during the preparation and prosecution of the application because I did not anticipate the narrowness of the claims.

Feldhaus declaration at 4.

8. Copies of Shorma and Dimmer's declarations are located at tabs DD and EE of Wahpeton's exhibits in resistance to the prior motion for summary judgment. Both Shorma and Dimmer state in their respective declarations, in pertinent part,

> [t]hat the error in drafting the claims too narrowly as set forth in my earlier reissue declaration was apparently based on a failure of the attorney drafting the claims to understand the scope of the invention. Specifically, I do not believe that the attorney appreciated that it was not necessary to specify a particular type of/or location for the latch or extension plate used in the construction, or that he appreciated the function of the crank means for achieving tension in the tarp or the function of the resilient means as it cooperates with the crank means.

Shorma declaration at 3; Dimmer declaration at 4.

9. Wahpeton sells '746 roll-up tarp units for farm gravity boxes.

ate a genuine issue of material fact as to the "definiteness" of the patent.

As to infringement, although Bremer concedes that it has made and sold up to ten complete units copying the '746 roll-up tarp system, "that is where the alleged infringement ends." Defendant's Supplemental Opposition To Plaintiffs' Motion For Partial Summary Judgment Of Infringement, p. 3. Bremer contends that there are genuine issues of material fact as to the extent to which any of his repairs of Wahpeton covers, or the sale of repair kits including parts, infringed Wahpeton's '746 patent. The specific factual issues Bremer asserts are the extent to which he repaired patented products or sold replacement parts, and the point at which, if at all, such repairs and replacements crossed the line into infringement. Bremer asserts that Wahpeton contemplates repairs and replacements by making repair and replacement parts available through other dealers and contends further that Bremer's business was simply performing the contemplated repairs. Furthermore, Bremer argues that the facts will show that the component parts he sold had other uses besides uses that would infringe upon the '746 patent. Bremer contends that there are also genuine issues of material fact as to the point in time at which he would have been aware of any question that his repairs, replacements, or manufacture of complete systems, were infringing the '746 patent.

As to his antitrust counterclaim, Bremer asserts that there are genuine issues of material fact as to whether Wahpeton has instructed its dealers, including Wilson Trailer Company, not to sell hardware for the '746 roll-up tarp system to Bremer, thus making it difficult for Bremer to compete in the repair and replacement parts market for roll-up tarps, and thereby attempting to monopolize that aftermarket. Further, Bremer contends that Wahpeton has coerced its customers, including Timpte, Inc., into not buying replacement parts for '746 roll-up tarp systems, including canvas, which has substantial non-infringing uses, from anyone but Wahpeton, in a further attempt to monopolize the repair and· replacement parts aftermarket.

The court will determine in its legal analysis whether any of these asserted genuine issues of material fact are such that, with the burden of proof properly allocated, and all pertinent factors considered, partial summary judgment is precluded on any of the issues Wahpeton contends are appropriate for such disposition. *Gasser Chair Co.,* 60 F.3d at 772; *Nike, Inc.,* 43 F.3d at 646.

## IV. LEGAL ANALYSIS

Wahpeton has moved for partial summary judgment, separately, on three broad issues: (1) the validity of its patent; (2) Bremer's infringement of that patent; and (3) the inadequacy of Bremer's counterclaim for violation of the antitrust laws. The court will consider each of these issues, with pertinent subissues, *seriatim.*

### A. Patent Validity

The court's legal analysis begins with challenges to and assertions of the validity of the '746 patent, because if the patent is invalid, infringement becomes a moot issue. *See, e.g., Miles Labs., Inc. v. Shandon, Inc.,* 997 F.2d 870, 879 (Fed.Cir.1993) (because the court of appeals affirmed the district court's determination of invalidity, it did not reach the district court's infringement determination), *cert. denied,* 510 U.S. 1100, 114 S.Ct. 943, 127 L.Ed.2d 232 (1994); *Cedarapids, Inc. v. Nordberg, Inc.,* 895 F.Supp. 1230 (N.D.Iowa 1995) (citing *Miles Labs.,* and considering validity or invalidity of a patent in suit on summary judgment before addressing infringement issues). Furthermore, the Supreme Court has directed that courts generally should rule on validity issues, even if the court determines that the patent in suit was not infringed. *Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993); *see also Mendenhall v. Cedarapids, Inc.,* 5 F.3d 1557, 1562 (Fed.Cir. 1993) (noting this requirement), *cert. denied,* 511 U.S. 1031, 114 S.Ct. 1540, 128 L.Ed.2d 192 (1994). Finally, because either the validity or infringement determination may be separately dispositive of this case, at least as to Wahpeton's claims, the court will undertake to determine both the validity and infringement questions here, at least to the

extent these questions are amenable to summary judgment. Wahpeton asserts that Bremer cannot meet his high burden to overcome the presumption of validity of the patent, that Bremer's argument that the patent is invalid owing to a defective declaration on reissue has been rejected by this court, and that Bremer's assertions of indefiniteness, anticipation, and obviousness have either been abandoned or are legally insufficient.

### 1. Defective Reissue Oath

■ The patent reissue process, 35 U.S.C. §§ 251–252, is designed to correct mistakes in drafting or the like in a patent already issued. *Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* —— U.S. ——, ——, 117 S.Ct. 1040, 1047, 137 L.Ed.2d 146 (1997) (holding, *inter alia,* that the availability of the reissue process did not vitiate the viability of the doctrine of equivalents for products that do not literally infringe a patent). Therefore, in order to obtain a reissue patent, the patentee must file an oath or declaration stating that the original patent is defective because of an "error in the patent," such as claiming more or less than the patentee was entitled to, and an "error in conduct," which is that the error in the patent occurred without deceptive intent. *Hewlett–Packard Co. v. Bausch & Lomb Inc.,* 882 F.2d 1556, 1564 (Fed.Cir.1989), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1031 (1990).

The court has addressed before the issue of the alleged defectiveness of the reissue oath of the '746 patent. In Bremer's motion for summary judgment, Bremer relied in part on the alleged inadequacy of the reissue declaration in challenging the validity of the patent in suit. The court ruled Bremer had failed to establish patent invalidity due to insufficient specification of the reasons for "error in conduct." *Wahpeton Canvas Co.,* 893 F.Supp. at 874. Here, Wahpeton asserts in its own motion for summary judgment that the reissue patent is valid, Bremer's contentions concerning a defective oath for the reissue of the '746 patent notwithstanding.

■ In its previous opinion on Bremer's motion for summary judgment, this court recounted in some detail the requirements for an effective reissue declaration. *Wahpeton,* 893 F.Supp. at 872–74. This court then denied Bremer's motion for summary judgment on the ineffectiveness of the reissue declarations in this case, because the court found that Bremer had insufficiently specified the reasons for "error in conduct," one of two elements that must be shown for reissuance. *Id.* at 874. In support of its own motion, Wahpeton has identified the elements of its declarations that satisfy this required element, specifically, that the attorney prosecuting the original patent application, Mr. Feldhaus, failed, with no intent to deceive, to grasp the full nature of the patentable discovery, and therefore did not claim the full scope of the invention to which the inventors were entitled. Consequently, Wahpeton has carried its initial burden under Rule 56(c) of informing the district court of the basis for its motion by identifying portions of the record it believes demonstrate the absence of a genuine issue of material fact that the reissue declarations were effective. *Glaverbel,* 45 F.3d at 1560; *Conroy,* 14 F.3d at 1575.

Bremer now bears the burden of raising more than "some metaphysical doubt as to the material facts." *Matsushita* at 586, 106 S.Ct. at 1356. Bremer is required, under Rule 56(e), to go beyond the pleadings, and by affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. However, in resistance to Wahpeton's motion, Bremer has produced no new evidence in support of his contention that the reissue oath was defective. Bremer offers no new evidence showing an absence of declarations of any "error in conduct" or "error in the patent," which are required to satisfy the statutory requirement of "error" under section 251. *Hewlett–Packard Co. v. Bausch & Lomb Inc.,* 882 F.2d 1556, 1564 (Fed.Cir. 1989), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1031 (1990). Thus, there is not even a "metaphysical doubt" as a matter of fact as to the validity of the reissuance oath. *Matsushita* at 586, 106 S.Ct. at 1355–56.

Furthermore, although Bremer has attempted to identify with greater specificity the alleged "error in conduct" that makes the reissuance oath defective as a matter of law, he has failed to do so effectively. Bremer asserts that concerns that patent claims could be construed too narrowly does not, as a matter of law, satisfy the error in conduct requirement. However, in so arguing, Bremer misstates the holding of *Hewlett–Packard,* 882 F.2d at 1565–66, when he reads that case as saying that "claims which are too narrow [cannot] give rise to an inference of oversight." Defendants' Supplemental Opposition To Plaintiffs' Motion For Partial Summary Judgment Of Patent Validity, p. 5. The *Hewlett–Packard* decision actually contrasted an inference of oversight from the fact that narrower claims could have been obtained, an inference the court rejected, with the situation in which "broader claims" could have been prosecuted. *See Hewlett–Packard,* 882 F.2d at 1566 (citing *Ball Corp. v. United States,* 729 F.2d 1429, 1435–36 (Fed.Cir. 1984)). The reissue declarations here clearly alleged that the error in conduct was unintentionally claiming "less than [the patentees] had a right to claim in the patent," 35 U.S.C. § 251, because the claims could be construed too narrowly, based on Mr. Feldhaus's misunderstanding of the true scope of the invention. As a matter of law, therefore, the reissuance declarations for the '746 patent were adequate.

Accordingly, because Bremer offers no new evidence in support of his resistance to Wahpeton's motion for partial summary judgment on the adequacy of the reissue declaration, and Bremer's argument in resistance to this portion of Wahpeton's motion is legally erroneous, Wahpeton's motion for summary judgment regarding the validity of its patent will be granted as to the effectiveness of the reissue declarations. The issue of the defectiveness of the reissue declarations therefore cannot be raised at trial, if trial is otherwise required.

### 2. *Invalidity in light of prior art*

Wahpeton has also moved for summary judgment on validity, arguing that Bremer has abandoned his assertions of anticipation and obviousness under § 102 and § 103, respectively. "The inherent teaching of a prior art reference, a question of fact, arises both in the context of anticipation and obviousness." *In re Napier,* 55 F.3d 610, 613 (Fed. Cir.1995). An invention is not patentable if it was anticipated pursuant to 35 U.S.C. § 102(a):

A person shall be entitled to a patent unless—(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent.

35 U.S.C. § 102(a). Nor is an invention patentable if it was obvious under the prior art pursuant to 35 U.S.C. § 103:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains....

35 U.S.C. § 103.

■ The boundary between a claim of anticipation under § 102 and a claim of obviousness under § 103 is clear in the law. The fundamental distinction between obviousness and anticipation, both of which are based on the relationship between the claimed invention and the prior art, is that a claim of anticipation must be based on the presence of each and every limitation of the claim in a *single* reference, *see, e.g., Glaxo, Inc. v. Novopharm, Ltd.,* 52 F.3d 1043, 1047 (Fed.Cir. 1995), while obviousness is determined from the combined teachings of the prior art *taken as a whole. Napier,* 55 F.3d at 613; *see also Continental Can Co. v. Monsanto Co.,* 948 F.2d 1264, 1267 (Fed.Cir.1991) ("When more than one reference is required to establish unpatentability of the claimed invention anticipation under § 102 cannot be found, and validity is determined in terms of § 103.").

#### a. *Anticipation of the '746 reissue patent*

Wahpeton may well be correct that Bremer has abandoned his contention that the '746

patent has been anticipated, because the court finds Bremer offers no argument whatsoever in support of that contention in resistance to the present motion for summary judgment. Furthermore, such a contention would be untenable here.

■ A claim is anticipated, and therefore invalid, only when a single prior art reference discloses each and every limitation of the claim. *Glaxo*, 52 F.3d at 1047 (citing *Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1571 (Fed.Cir.1986), *cert. denied sub nom. Stora Kopparbergs Bergslags AB v. Crucible, Inc.*, 479 U.S. 1034, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987)); *Glaverbel*, 45 F.3d at 1554 ("Anticipation requires identity of the claimed process and a process of the prior art; the claimed process, including each step thereof, must have been described or embodied, either expressly or inherently, in a single reference."); *Electro Med. Sys. v. Cooper Life Sciences*, 34 F.3d 1048, 1052 (Fed.Cir. 1994) (anticipation under § 102 "requires the presence in a single prior art disclosure of each and every element of a claimed invention."); *In re Paulsen*, 30 F.3d 1475, 1478–79 (Fed.Cir.1994); *Shearing v. Iolab Corp.*, 975 F.2d 1541, 1544 (Fed.Cir.1992) (prior art reference must "disclose in advance of [the patentee's] invention each and every element of the ... patent's claims," citing *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed.Cir.1991)); *Continental Can*, 948 F.2d at 1267 (describing the requirement of § 102(a) as a "statutory requirement that a patented invention be 'new' "); *Scripps Clinic*, 927 F.2d at 1576; *Diversitech Corp. v. Century Steps, Inc.*, 850 F.2d 675, 677 (Fed.Cir.1988). Thus, the classic test of anticipation was first articulated in *Peters v. Active Mfg. Co.*, 129 U.S. 530, 9 S.Ct. 389, 32 L.Ed. 738 (1889), as follows: "That which infringes, if later, would anticipate, if earlier." *Peters*, 129 U.S. at 537, 9 S.Ct. at 392.

■ The disclosure of the prior art need not be express, but may inherently anticipate the patented invention where the inherent anticipation would be appreciated by one of ordinary skill in the art. *Glaxo*, 52 F.3d at 1047 (citing *Continental Can*, 948 F.2d at 1268); *Glaverbel*, 45 F.3d at 1554;

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1369 (Fed.Cir. 1991), *cert. denied*, 506 U.S. 817, 113 S.Ct. 60, 121 L.Ed.2d 28 (1992); *Scripps Clinic*, 927 F.2d at 1576. However, if no single prior art reference anticipates each and every claim, but a combination thereof possibly does, the proper inquiry is obviousness, not lack of novelty. *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed.Cir.1983).

■ Here, Bremer offers no single prior art reference that he contends anticipates each and every claim. Instead, Bremer appears to rely on the combination of many prior art patents, some of which were before and considered by the examiner when reissuing the patent, and some of which were not before the examiner. While Bremer's assertions concerning the teaching of combinations of prior art might generate a § 103 obviousness claim, as previously stated, *see Connell*, 722 F.2d at 1548, they cannot generate a § 102 claim of anticipation as a matter of law. *Glaxo*, 52 F.3d at 1047; *Glaverbel*, 45 F.3d at 1554; *Electro Med. Sys.*, 34 F.3d at 1052; *In re Paulsen*, 30 F.3d at 1478–79; *Shearing*, 975 F.2d at 1544; *Continental Can*, 948 F.2d at 1267; *Scripps Clinic*, 927 F.2d at 1576; *Diversitech*, 850 F.2d at 677. Therefore, Bremer has not generated a genuine issue of material fact to withstand summary judgment on his contention that Wahpeton's '746 patent is invalid owing to anticipation. Consequently, Wahpeton's motion for partial summary judgment on validity must be granted as to anticipation.

### b. Obviousness of the '746 patent

Bremer has, however, argued, not abandoned, his contention that the '746 patent is "obvious," and therefore invalid, pursuant to 35 U.S.C. § 103. As to obviousness, Bremer is relying on the combination of many prior art patents, some of which were considered by the examiner when reissuing the patent, and some of which were not before the examiner. It is Bremer's contention that the combination of these prior art patents and the admission of Mr. Dimmer, one of the inventors of the patent in suit, that all of the elements of the claimed invention except the latch plate or extension plate were already in

existence before he arrived at his concept, render the patent in suit obvious under § 103.

 The court is mindful that, even on summary judgment, obviousness must be proved by clear and convincing evidence. *See Glaverbel,* 45 F.3d at 1555 (invalidity based on obviousness must be established by clear and convincing evidence); *Therma–Tru Corp. v. Peachtree Doors, Inc.,* 44 F.3d 988, 992 (Fed.Cir.1995) (same); *see also National Presto Indus., Inc.,* 76 F.3d at 1189 ("in deciding a motion for summary judgment of invalidity the [heightened] burden of proof [of clear and convincing evidence] must be considered."); *Gasser Chair Co.,* 60 F.3d at 772 (in order for the court to grant summary judgment, "there must ... be no genuine issue of material fact, the burden of proof of an issue must be correctly allocated, and all pertinent factors must be considered."). The court is also mindful that the teaching of prior art upon which an obviousness determination is made is a question of *fact,* although the ultimate determination of obviousness is a question of law. *In re Napier,* 55 F.3d at 613.

" 'As obviousness can be established on the basis of the combined teachings of references, we think it is clear that simple enhancements of existing prior art do not constitute a substantial difference between the subject matter claimed in the ... patent and that of the prior art.' " *Continental Can Co.,* 948 F.2d at 1273 (quoting the lower court). However, "there must be some reason for the combination other than the hindsight gleaned from the invention itself." *Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1138 (Fed.Cir.1985). More recently, the Federal Circuit Court of Appeals has provided a succinct statement of the test and standards for a determination of obviousness in relation to combining teachings that individually may suggest separate modifications found together in the patent in suit:

"Obviousness cannot be established by combining the teachings of prior art to produce the claimed invention, absent some teaching, suggestion or incentive supporting the combination." *In re Bond,* 910 F.2d 831, 834, 15 USPQ2d 1566, 1568

(Fed.Cir.1990) (quoting *Carella v. Starlight Archery and Pro Line Co.,* 804 F.2d 135, 140, 231 USPQ 644, 647 (Fed.Cir.1986).) However, the "suggestion to modify the art to produce the claimed invention need not be expressly stated in one or all the references used to show obviousness." *Cable Elec. Prods., Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1025, 226 USPQ 881, 886 (Fed. Cir.1985). Rather, the test is whether the combined teachings of the prior art, taken as a whole, would have rendered the claimed invention obvious to one of ordinary skill in the art. *See In re Gorman,* 933 F.2d 982, 986, 18 USPQ2d 1885, 1888 (Fed.Cir.1991).

*Napier,* 55 F.3d at 613.

 Bremer has generated a genuine issue of material fact as to the obviousness of the '746 patent in resistance to Wahpeton's motion for summary judgment. Bremer points to the admission of one of the inventors of the patent in other litigation that all of the elements of the patent in suit, with the exception of the latch plate, were already in existence at the time of the alleged invention. Defendant's Exhibit 17. Furthermore, Bremer has identified other prior art, some of it not disclosed to the patent examiner, that included latch plates similar to that used in the '746 patent. These underlying factual questions, as to obviousness of individual elements and the combination of those elements, preclude summary judgment on the question of obviousness under § 103. Wahpeton's motion for partial summary judgment on validity will therefore be denied as to obviousness.

### 3. Indefiniteness of the '746 reissue patent

Wahpeton's only argument for summary judgment on the issue of indefiniteness under 35 U.S.C. § 112 is that Bremer has abandoned his assertion that the '746 patent is indefinite. However, Bremer has argued that comments of the Federal Circuit Court of Appeals in *Wahpeton Canvas Co. v. Frontier, Inc.,* 870 F.2d 1546 (Fed.Cir.1989), concerning the same patent also in suit here, raise a genuine issue of material fact as to the definiteness of the patent. The com-

ments of the appellate court to which Bremer refers are the following:

> Many of Wahpeton's claims are semantic mish-mash, containing terms not in the specification, adding numerous innocuous details differently labeled in dependent claims, and including the same structure twice in a single claim by changing its label.

*Frontier, Inc.*, 870 F.2d at 1551. However, that court did not decide, in fact, did not address, any question of the indefiniteness of the patent under the standards of § 112.

"Definiteness" is a question of law, which therefore will be reviewed *de novo* by the appellate court. *North Am. Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571, 1579 (Fed.Cir.1993), *cert. denied*, 511 U.S. 1069, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994); *Miles Labs.*, 997 F.2d at 874; *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1181 (Fed. Cir.1991); *Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1453 (Fed.Cir.1988) (hereinafter "*Hybritech II*"); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576 (Fed.Cir.1986). In *Morton Int'l, Inc.*, assertions of a lack of definiteness required the court to determine "whether those skilled in the art would understand what is claimed when the claim is read in the light of the specification." *Morton Int'l*, 5 F.3d at 1470; *see also North Am. Vaccine*, 7 F.3d at 1579 (same test); *Miles Labs.*, 997 F.2d at 874 ("The 'distinctly claiming' requirement means that the claims must have a clear and definite meaning when construed in the light of the complete patent document," and stating the test for definiteness as understanding what is claimed); *Orthokinetics*, 806 F.2d at 1576 ("A decision on whether a claim is invalid under § 112, 2d ¶, requires a determination of whether those skilled in the art would understand what is claimed when the claim is read in light of the specification."); *Amgen*, 927 F.2d at 1217.

The degree of precision with which adequate claims must be stated to meet the definiteness requirement "is a function of the nature of the subject matter." *Miles Labs.*, 997 F.2d at 875. Thus, in *Morton Int'l*, the court found that clear and convincing evidence established that one skilled in the art could not determine whether a given compound was within the scope of the claims, because the claims were not sufficiently precise to permit a potential competitor to determine whether or not the competitor was infringing. *Morton Int'l*, 5 F.3d at 1470.

Even in light of the criticisms of the Federal Circuit Court of Appeals of the claims in the patent in suit here, this court cannot find as a matter of law that the claims of the '746 patent are indefinite within the meaning of § 112. The degree of precision required here, in light of the subject matter of the patent, is considerably less than one would expect of the specification of a compound in *Morton*. The criticisms of the Federal Circuit Court of Appeals in *Frontier, Inc.*, with which this court agrees, establish no more than that the claims of the '746 patent are badly written, not that a person skilled in the art would not understand what is claimed when the claim is read in the light of the specification. *Morton Int'l*, 5 F.3d at 1470 (this test of indefiniteness); *see also North Am. Vaccine*, 7 F.3d at 1579 (same test); *Orthokinetics*, 806 F.2d at 1576 (same test); *Amgen*, 927 F.2d at 1217 (same test); *see also Miles Labs.*, 997 F.2d at 874 (articulating a similar test).

Furthermore, it is at this point that the presumption of validity of the patent is most persuasively raised. Pursuant to 35 U.S.C. § 282, patents are presumed valid, and the one attacking validity has the burden of proving invalidity by clear and convincing evidence. *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed.Cir. 1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987). Evidence that one court finds the claims of the patent badly written does not meet this high standard. The portion of Wahpeton's motion for partial summary judgment on validity pertaining to definiteness will therefore be granted.

Thus, Wahpeton's motion for partial summary judgment on validity will be granted in part, as to the alleged defectiveness of the reissue declaration, anticipation, and indefiniteness of the claims, but denied as to obviousness.

## B. Infringement

Because, when it was Bremer's flip of the coin to assert non-infringement, this court denied summary judgment, Wahpeton's motion for partial summary judgment on infringement asks the court to pick up the coin and look at the other side, and thereby reach the conclusion that Bremer *has* infringed as a matter of law. Wahpeton asserts that undisputed evidence demonstrates that Bremer engaged in both direct and contributory infringement. Bremer asserts that the same arguments the court used to deny his earlier motion for summary judgment should be applied here as well to deny Wahpeton's motion for summary judgment. Bremer contends that the same bright line the court refused to draw in the prior summary judgment ruling-between permissible repair of a patented product and impermissible reconstruction-prevents the court from ruling in favor of Wahpeton on Wahpeton's motion for partial summary judgment on infringement.

At the outset, the court reiterates the warning of the Federal Circuit Court of Appeals that "[a] district court should approach a motion for summary judgment on the fact issue of infringement with great care." *Cole*, 102 F.3d at 528. Furthermore, the court finds that it is indeed beset with the same difficulty it had in addressing the repair versus reconstruction issue in Bremer's motion for summary judgment. The Supreme Court has taken "an expansive view of conduct that constitutes permissible repair of a patented combination of unpatented elements." *Sage Prods., Inc. v. Devon Indus., Inc.*, 45 F.3d 1575, 1578 (Fed.Cir.1995). Yet, despite the Supreme Court's expansive view of permissible repair, there is no doubt a point at which permissible repair transforms into impermissible reconstruction.

As this court said in its prior summary judgment ruling, "The closest court precedent the court has been able to locate involving multiple part replacement is the Federal Circuit's decision in *Dana Corp. v. American Precision Co.*, 827 F.2d 755 (Fed. Cir.1987)." *Wahpeton Canvas*, 893 F.Supp. at 871. In *Dana Corp.*, the plaintiffs sold patented truck clutches, and the defendant sold replacement parts for the clutches to rebuilders. The court in *Dana Corp.* held that replacement of worn out clutch parts, where no more than four pats of the clutch were new, constituted permissible repair. *Dana Corp.*, 827 F.2d at 759. Just when the replacement of an unidentified number of unidentified parts meets the threshold of impermissible reconstruction is a question this court simply cannot answer without a thorough presentation of all of the facts.

The court still believes, as before, that "any determination of whether a patented '746 roll-up tarp has become spent must be made by reference to the physical condition of the roll-up tarp taken as a whole and not on some bright-line test." *Wahpeton Canvas*, 893 F.Supp. at 871. The court lacks the ability to draw a bright-line test for Wahpeton or for Bremer as to when permissible repair ends and when impermissible reconstruction begins. Not knowing what steps Bremer has taken toward repairing/reconstructing any specific roll-up unit, and what the condition of the roll-up units were prior to any action by Bremer creates a genuine issue of material fact. Therefore, Wahpeton's motion for summary judgment regarding contributory infringement must be denied. Similarly, apart from the conceded sale of complete systems by Bremer, there are genuine issues of material fact as to Bremer's direct and contributory infringement of the '746 patent from the sale of repair kits.

Wahpeton's motion for partial summary judgment on infringement will therefore be granted only as to the complete units Bremer has sold, although the precise number of such units, and the damages flowing from such sales, remain questions of fact for trial. Wahpeton's motion for partial summary judgment will be denied as to any other claim of direct or contributory infringement.

## C. Antitrust Counterclaim

Finally, Wahpeton has moved for partial summary judgment on Bremer's counterclaim under §§ 1 and 2 of the Sherman Act, 15 U. § .C. §§§ 1 & 2. The statement of the counterclaim itself in Bremer's second amended answer appeared to include both

"tying" and "attempt to monopolize," and Wahpeton has attacked both aspects of the counterclaim in its motion for summary judgment. However, any "tying" counterclaim appears to have vanished from Bremer's resistance to the motion for summary judgment, because, while asserting that Wahpeton "fails to appreciate the nature of Bremer's antitrust counterclaim," Bremer articulated the counterclaim only as alleging "an attempt to monopolize the secondary market for replacement parts for Wahpeton's SHUR–LOK® system." Defendants' Supplemental Memorandum Of Points And Authorities In Opposition To Plaintiffs' Motion For Summary Judgment On Defendants' Antitrust Counterclaim, p. 1. The counterclaim therefore rests on what Bremer characterizes as "[Wahpeton's] pattern of exclusionary conduct in pressuring and coercing those who sell replacement parts into either not competing with Wahpeton or making it difficult to do so." *Id.* Bremer devotes the entirety of his resistance to attempting to generate genuine issues of material fact as to an attempt to monopolize claim under § 2 of the Sherman Act. Therefore, the court construes Bremer to have waived any "tying" counterclaim.

The arguments of the parties concerning this counterclaim are cast primarily in terms of the applicability of the Supreme Court's decision in *Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), and the factual issue of whether Wahpeton's activities display an attempt to monopolize, or only legitimate actions to protect its '746 patent. Before addressing the import of the *Kodak* decision for the present litigation, and Bremer's assertions of genuine issues of material fact, the

court first looks briefly at the nature of the offense of "attempt to monopolize." In its analysis of Bremer's antitrust counterclaim, the court notes the holding of the Federal Circuit Court of Appeals that the appellate court "must approach a federal antitrust claim as would a court of appeals in the circuit of the district court whose judgment [it] review[s].'" *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1583 (Fed.Cir.1993) (quoting *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 875 (Fed.Cir. 1985)). Therefore, to the extent it would be controlling or instructive on Bremer's antitrust counterclaim, this court also looks to decisions of the Eighth Circuit Court of Appeals.[10]

### 1. *"Attempt to monopolize"*

Section 2 of the Sherman Act explicitly makes it an offense to attempt to monopolize, stating that it is an offense for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. The Eighth Circuit Court of Appeals has observed,

> Although this section reads as a criminal statute, the antitrust laws provide a civil cause of action arising from a violation of this section. *See* 15 U.S.C. § 15(a). By its language, section two of the Sherman Act is directed at controlling monopolies.

*Bathke v. Casey's General Stores, Inc.*, 64 F.3d 340, 343 (8th Cir.1995).

The meaning of the term "attempt" had a long history of development in the common law at the time the Sherman Act was passed by Congress. Much of the history of that

---

**10.** In *Carroll Touch*, the Federal Circuit Court of Appeals found that this requirement of applying the law of the circuit court of appeals of the district court hearing non-patent claims in a patent case extended to the appropriate standards for summary judgment. *Carroll Touch*, 15 F.3d at 1583 (applying standards for summary judgment of the Seventh Circuit Court of Appeals to the antitrust counterclaim in a patent case). This court has stated the standards for summary judgment as articulated by the Eighth Circuit Court of Appeals on a number of occasions. *See Sicard v. City of Sioux City*, 950 F.Supp. 1420,

1425–27 (N.D.Iowa 1996); *Gerdes v. Swift–Eckrich, Inc.*, 949 F.Supp. 1386, 1390–92 (N.D.Iowa 1996); *Heather K. v. City of Mallard, Ia.*, 946 F.Supp. 1373, 1377–78 (N.D.Iowa Nov.8, 1996); *Jones Distrib. Co., Inc. v. White Consol. Indus., Inc.*, 943 F.Supp. 1445, 1452–53 (N.D.Iowa 1996); *Valentine v. American Home Shield Corp.*, 939 F.Supp. 1376, 1380–82 (N.D.Iowa 1996); *Hanson v. Hancock County Mem. Hosp.*, 938 F.Supp. 1419, 1425–27 (N.D.Iowa 1996); and *Coulter v. CIGNA Property & Cas. Cos.*, 934 F.Supp. 1101, 1106–07 (N.D.Iowa 1996). This court therefore will not repeat those standards here.

meaning has been incorporated into the statutory offense of attempt to monopolize. In *Swift & Co. v. United States,* Justice Holmes described the meaning of "attempt to monopolize" in light of the common law meaning of attempt by stating,

> Intent ... is essential to such an attempt. Where acts are not sufficient in themselves to produce a result which the law seeks to prevent,-for instance, the monopoly,-but require further acts in addition to the mere forces of nature to bring that result to pass, an intent to bring it to pass is necessary in order to produce a dangerous probability that it will happen.

*Swift & Co. v. United States,* 196 U.S. 375, 376, 25 S.Ct. 276, 279, 49 L.Ed. 518 (1905). Justice Holmes' formulation of the attempt to monopolize offense requires the following: (1) the defendant's specific intent to monopolize; (2) some kind of anticompetitive conduct; and (3) a "dangerous probability" that the defendant would have acquired monopoly power. *Id.* Much more recently, the Supreme Court confirmed Justice Holmes's analysis when it stated, "Consistent with our cases, it is generally required that to demonstrate attempted monopolization a plaintiff must prove (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize, and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456, 113 S.Ct. 884, 890–91, 122 L.Ed.2d 247 (1993); *see also Amerinet, Inc. v. Xerox, Corp.,* 972 F.2d 1483, 1490 (8th Cir.1992) ("In order to maintain an attempted monopolization claim under Section 2, [the claimant] must prove: '(1) a specific intent by the defendant to control prices or destroy competition; (2) predatory or anticompetitive conduct undertaken by the defendant directed to accomplishing the unlawful purpose; and (3) a dangerous probability of success.' *General Industries Corp. v. Hartz Mountain Corp.,* 810 F.2d 795, 801 (8th Cir.1987)."). Proof of a dangerous probability of successful monopolization inherently involves some kind of market analysis. *Id.; see also Bathke,* 64 F.3d at 344–45 ("[I]t has long been clear that plaintiffs asserting claims of monopolization in violation of section 2 of the Sherman Act were required to

prove the relevant geographical market," *see Spectrum Sports,* 506 U.S. at 459, 113 S.Ct. at 892 ("demonstrating the dangerous probability of monopolization in an attempt case also requires inquiry into the relevant product and geographic market and the defendants' economic power in that market"); *Morgenstern v. Wilson,* 29 F.3d 1291, 1295–96 (8th Cir.1994) (to determine whether the defendants have the market power required for monopolization liability, the plaintiffs had to demonstrate a well defined product and geographic market)[, *cert. denied,* —— U.S. ——, 115 S.Ct. 1100, 130 L.Ed.2d 1068 (1995) ].")

The Federal Circuit Court of Appeals has observed that bringing a lawsuit to enforce patent rights does not, of itself, constitute a violation of the antitrust laws or patent misuse. *Glaverbel,* 45 F.3d at 1558; *Carroll Touch, Inc.,* 15 F.3d at 1581–82. Rather, there must be bad faith and improper purpose in bringing the suit, in implementation of an illegal restraint of trade. *Id.; Carroll Touch,* 15 F.3d at 1582. However, it is not the filing of the present lawsuit that Bremer contends is the antitrust violation here, but Wahpeton's alleged attempt to monopolize the aftermarket for repair and replacement parts of '746 roll-up tarp systems.

### 2. The Kodak decision

The court now turns to the decision in *Eastman Kodak v. Image Technical Servs.,* 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), upon which both parties place considerable emphasis. In *Kodak,* the plaintiffs, a group of independent service organizations (ISOs), contended that Kodak had adopted polices to limit the availability of parts to ISOs and to make it more difficult for the ISOs to compete with Kodak in servicing Kodak photocopiers and micrographic equipment. *Kodak,* 504 U.S. at 455, 112 S.Ct. at 2076. In 1985 and 1986, Kodak implemented a policy of selling replacement parts to its equipment only to buyers of Kodak equipment who used Kodak service or repaired their own machines. *Id.* at 458, 112 S.Ct. at 2077–78. As part of the same policy, Kodak sought to limit ISO access to other sources for Kodak parts by reaching agreements

with its outside parts manufacturers not to sell parts that would fit Kodak machines to anyone other than Kodak. *Id.* Kodak's intent, and the actual effect of its policy, was to make it more difficult for ISOs to sell service for Kodak machines. *Id.*

The Supreme Court considered the ISOs' claims that Kodak's policy violated § 1 of the Sherman Act, by illegally tying the sale of service for Kodak machines to the sale of parts, and violated § 2 of the Sherman Act as unlawfully monopolizing or attempting to monopolize the sale of service for Kodak machines. *Id.* at 459, 112 S.Ct. at 2078. This court need only be concerned with the monopolization portions of the *Kodak* ruling, since Bremer has abandoned his tying claim.

As to the monopolization claim, the Supreme Court held that there was a triable issue as to whether service and parts constituted separate markets from each other, *Kodak,* 504 U.S. at 481, 112 S.Ct. at 2089–90, because there was a genuine issue of material fact as to whether there was sufficient consumer demand so that it would be efficient for a firm to provide service separately from parts. *Id.* at 462, 112 S.Ct. at 2079–80.[11] The Court also noted that monopolization requires not only market power, but something greater than the market power required under a tying claim. *Id.* at 481, 112 S.Ct. at 2089–90. The Court found that evidence that Kodak controlled nearly 100% of the parts market and 80% to 95% of the service market, with no readily available substitutes, was sufficient to survive summary judgment even under the more stringent standards of § 2 of the Sherman Act. *Id.* The Court also rejected the notion that the aftermarket for a single brand of product can never be a relevant market, because the question depended upon choices available to the owners of the equipment. *Id.* at 481–82, 112 S.Ct. at 2089–90. If the parts and services for the primary product were not interchangeable with other manufacturers' parts and services, the relevant market could be composed only of those companies that serviced the single brand of machines under a

"commercial realities" test. *Id.* at 482, 112 S.Ct. at 2090.

Next, the Court defined monopolization as "the use of monopoly power 'to foreclose competition, to gain a competitive advantage, or to destroy a competitor.'" *Id.* at 482–83, 112 S.Ct. at 2090 (quoting *United States v. Griffith,* 334 U.S. 100, 107, 68 S.Ct. 941, 945, 92 L.Ed. 1236 (1948)). The Court found genuine issues of material fact as to whether Kodak took exclusionary action to maintain its parts monopoly and used its control over parts to strengthen its monopoly share of the Kodak service market, without a valid business reason. *Id.* at 483, 112 S.Ct. at 2090–91. The Court found sufficient to generate a genuine issues of material fact the ISOs' evidence that they provided quality service, that Kodak's action appeared inconsistent with any need to control inventory costs, and that Kodak's action did not appear to prevent "free-riding." *Id.* at 483–85, 112 S.Ct. at 2090–92.

A recent decision of the Sixth Circuit Court of Appeals applying *Kodak* to repair and replacement parts or services is also instructive. In *PSI Repair Servs., Inc. v. Honeywell, Inc.,* 104 F.3d 811 (6th Cir.1997), the Sixth Circuit Court of Appeals, applying *Kodak*'s "consumer demand" test, rejected the repair company's assertion that repair parts and services were a distinct market from the market for the primary product, because the "bundling" of the primary product with the repairs and services was well-known to customers prior to sale, in contrast to *Kodak,* in which a critical reason for the Supreme Court's definition of the market was Kodak's creation of the bundling only after it had "locked-in" customers. *PSI Repair Services,* 104 F.3d at 818–820 & 821. Because the repair service could not demonstrate market power in the relevant market, summary judgment was appropriate in the manufacturer's favor on the monopolization claim. *Id.* Furthermore, the appellate court held that the repair service could not generate a genuine issue of material fact as to exclusionary or anticompetitive conduct. *Id.*

---

11. Presumably, the same test applies to the question presented here, which is whether the repair and service markets are separate from the market for the primary product. *PSI Repair Servs., Inc. v. Honeywell, Inc.,* 104 F.3d 811, 818–21 (6th Cir.1997) (discussed infra).

at 821–22. The repair service had not alleged, nor produced evidence showing, that the manufacturer had achieved or maintained monopoly power through its parts-restrictive policy. *Id.* at 822.

### 3. *Bremer's monopolization claim*

Wahpeton contends that the *Kodak* decision is inapposite here for several reasons. First, Wahpeton contends that, unlike the manufacturer in *Kodak*, it does not require its customers for SHUR–LOK® systems to purchase service or service contracts from Wahpeton. Second, Wahpeton sells SHUR–LOK® systems to more than one thousand customers, with no restrictions on its customers' use or sale, except for uses that infringe the '746 patent. Wahpeton also contends that Bremer has sources for parts other than Wahpeton. Finally, Wahpeton contends that it had a valid business reason for attempting to restrict Bremer's access to parts: Bremer's infringement of its patent.

Bremer asserts that there is a genuine issue of material fact as to whether Wahpeton has acquired or is attempting to acquire market power in the relevant market, which Bremer contends, as in *Kodak*, is the market for replacement parts. Bremer contends that Wahpeton has not denied that the relevant market is the market for replacement parts for SHUR–LOK® replacement parts or that Wahpeton is the dominant firm in that market. He then contends that there is a genuine issue of material fact as to whether customers of Wahpeton were "locked-in," and thus unable to engage in "lifecycle pricing," citing *Kodak*, 504 U.S. at 476, 112 S.Ct. at 2087. As evidence generating a genuine issue of material fact as to exclusionary conduct, Bremer offers letters from Wahpeton to its customers pressuring them not to buy

replacement tarps from anyone else, and instructions from Wahpeton to Wilson Trailer not to sell certain parts to Bremer. Bremer contends that this evidence generates a genuine issue of material fact as to whether Wahpeton has engaged in a pattern of conduct in coercing others to buy unpatented replacement parts only from Wahpeton and excluding Bremer and others from that market.

■ The court finds that summary judgment is appropriate on the antitrust counterclaim. Even assuming that there is no dispute or that there is a genuine issue of material fact that the relevant market is the market for SHUR–LOK® replacement parts and that Wahpeton is the dominant firm in that market, all that would arguably be established by such evidence is a dangerous probability of Wahpeton achieving a monopoly. *Cf. Kodak*, 504 U.S. at 481–83, 112 S.Ct. at 2089–91 (there was a genuine issue of material fact that the relevant market was the aftermarket for repair and service, and control of nearly 100% of the parts market and 80% to 95% of the service market was sufficient market share for a monopolization claim). However, Bremer has failed to generate a genuine issue of material fact as to anticompetitive or exclusionary conduct or intent to monopolize. *See Spectrum Sports, Inc.*, 506 U.S. at 456, 113 S.Ct. at 890–91 (elements of an attempt to monopolize claim); *see also Amerinet, Inc.*, 972 F.2d at 1490 (same).

#### a. *Anticompetitive conduct*

[21, 22] The court finds that some of the evidence Bremer relies upon as demonstrating a genuine issue of material fact on anticompetitive conduct is in fact inadmissible hearsay.[12] Other evidence fails to establish,

---

12. In response to Wahpeton's motion for summary judgment on his counterclaim Bremer offers a "declaration" by Donald W. Bremer. However, paragraph 2 of Donald W. Bremer's declaration does not satisfy the requirements of Rule 56(e), even assuming the "declaration" qualifies as an affidavit. Rule 56(e) requires that affidavits relating to summary judgment must "set forth such facts as would be admissible evidence." The law is well settled in this circuit and elsewhere that a party may not rely solely on inadmissible hearsay in opposing a motion for

summary judgment. *See Hanke v. Global Van Lines, Inc.*, 533 F.2d 396, 398 (8th Cir.1976) (holding that defendant's attorney's affidavit which appeared to be based on hearsay was entitled to no consideration); *Miller v. Solem*, 728 F.2d 1020, 1026 (8th Cir.) (holding that affidavits containing hearsay statements failed to comply with Rule 56(e)'s requirement that the facts set out in affidavits be admissible in evidence), *cert. denied*, 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984); *McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir.1972) (reversing dis-

or generate a genuine issue of material fact as to, the proposition for which it is offered.

Bremer offers the deposition testimony of Perry Hegstrom to prove or to generate a genuine issue of material fact that "Wilson has refused at the instruction of Wahpeton, to sell manufactured hardware to Bremer." Supplemental Memorandum of Points and Authorities in Opposition to Plaintiffs Motion for Summary Judgment on Defendant's Antitrust Counterclaim (Defendants' Opposition re: Antitrust Counterclaim), p. 2. In reality, however, the testimony stands for the opposite proposition. Hegstrom's testimony states:

Q: Has anyone ever admonished you for sale of parts to Sioux City Tarp?

A: Yes

Q: Have they told you to stop doing that?

A: Yes, mm-hmm (Yes).

\* \* \* \* \* \*

Q: And did you stop?

A: No.

Deposition of Perry Hegstrom, pp. 35–36. Although Bremer offers this deposition testimony as generating a genuine issue of material fact that "Wilson has refused at the instruction of Wahpeton, to sell manufactured hardware to Bremer," Defendants' Opposition re: Antitrust Counterclaim, p. 2, Hegstrom's testimony actually stands for the opposite proposition: Wilson *has not* refused to sell manufactured hardware to Bremer

despite instructions or pressure from Wahpeton.

The last piece of evidence Bremer offers to generate a genuine issue of material fact is a letter sent to Sioux City Tarp from Edwards Canvas, Inc., dated January 23, 1997. The letter states that Edwards Canvas will no longer be selling, installing, or repairing SHUR–LOK® brand tarp systems or similar roll-up systems pursuant to a settlement agreement between Edwards Canvas, Inc., and Wahpeton. This evidence alone is not sufficient to create a genuine issue of material fact in support of any element of an attempt to monopolize offense, because it does no more than indicate that Edwards Canvas has entered into a consent decree to terminate a patent infringement action. As stated above, the fact that Wahpeton has brought a lawsuit to ·enforce patent rights does not, of itself, constitute a violation of the antitrust laws or patent misuse. *Glaverbel,* 45 F.3d at 1558; *Carroll Touch, Inc.,* 15 F.3d at 1581–82.

Bremer has also failed to generate any genuine issue of material fact that Wahpeton has achieved or maintained monopoly power through its parts-restrictive policy. *PSI Repair Servs.,* 104 F.3d at 822. To the contrary, as Wahpeton contends, unlike the manufacturer in *Kodak,* Wahpeton does not require its customers for SHUR–LOK® systems to purchase service or service contracts from Wahpeton, and it sells SHUR–LOK® systems to more than one thousand customers, with no restrictions on its customers' use or sale. Thus, Bremer has failed to generate

trict court's denial of motion to strike affidavit containing hearsay); *see also Financial Timing Publications, Inc. v. Compugraphic Corp.,* 893 F.2d 936, 942 (8th Cir.1990) (pointing out that a party may not rely solely on inadmissible hearsay in opposing a motion for summary judgment); *Pink Supply Corp. v. Hiebert, Inc.,* 788 F.2d 1313, 1319 (8th Cir.1986) (declaring that "[w]ithout a showing that admissible evidence will be available at trial, a party may not rely on inadmissible hearsay" when opposing a motion for summary judgment).

Donald W. Bremer's declaration states, in paragraph 2:

On February 19th, 1997, I had a telephone conversation with Ray Boyer, a parts manager at a factory branch of Timpte, Inc. in Council Bluffs, Iowa. Timpte manufactures trailers, and often equips those trailers with SHUR–LOK tarps purchased from Wahpeton Canvas Co. Mr. Boyer told me that approximately three years ago, he reviewed a letter from Wahpeton Canvas Co. sent to Timpte, Inc. According to Boyer, Wahpeton letter warned that purchase of replacement canvas or tarps from anyone other than Wahpeton would constitute patent infringement.

Declaration of Donald W. Bremer, ¶ 2. The statement by Mr. Boyer to Mr. Bremer is hearsay. There is no hearsay exception under the Federal Rules of Evidence under which this statement might fall. Therefore, this paragraph does not meet the requirements of Rule 56(e), because it is not admissible hearsay evidence, and cannot be used to generate genuine issues of material fact in support of Bremer's counterclaim.

a genuine issue of material fact that Wahpeton's customers are "locked-in," such that any "lifecycle pricing" issue even arises. *Cf. Kodak,* 504 U.S. at 476, 112 S.Ct. at 2087; *PSI Repair Services,* 104 F.3d at 818–820 & 821. Finally, Bremer has failed to show that he cannot obtain parts from sources other than Wahpeton. *Kodak,* 504 U.S. at 481, 112 S.Ct. at 2089–90 (market power of the monopolist was only relevant where the complaining party did not have readily available substitutes).

Bremer has therefore failed to generate a genuine issue of material fact as to the anticompetitive conduct element of his attempt-to-monopolize counterclaim. *See Fed. R.Civ.P.* 56(e) (the non-moving party must designate "specific facts showing that there is a genuine issue for trial."); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995). Summary judgment is therefore appropriate in Wahpeton's favor on that counterclaim.

### b. Intent to monopolize

Failure to generate a genuine issue of material fact as to anticompetitive conduct alone would be sufficient ground to grant Wahpeton's motion for partial summary judgment on the antitrust counterclaim. Nonetheless, the court will also consider whether Bremer has generated a genuine issue of material fact as to intent to monopolize.

Bremer fares no better in attempting to raise such a genuine issue of material fact, however. Again, enforcing patent rights against competitors does not, standing alone, establish an intent to monopolize. *Glaverbel,* 45 F.3d at 1558; *Carroll Touch, Inc.,* 15 F.3d at 1581–82. Thus, the letter from Edwards Canvas generates no genuine issue of material fact on this issue, either. Furthermore, in contrast to the *Kodak* decision, Wahpeton's reason for not selling parts to Bremer, his alleged infringement, is entirely valid, and Bremer has not generated a genuine issue of material fact to the contrary. *Cf. Kodak,* 504 U.S. at 483–85, 112 S.Ct. at 2090–91 (finding genuine issues of material fact as to the

validity of the proffered business reason for apparently anticompetitive conduct).

Therefore, because Bremer has failed to generate a genuine issue of material fact sufficient for a reasonable jury to find for Bremer on his antitrust counterclaim, *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510 (necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party"); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994), Wahpeton's motion for partial summary judgment on Bremer's antitrust counterclaim must be granted.

## V. CONCLUSION

The court finds that Wahpeton's various motions for partial summary judgment should be granted, or granted in part and denied in part, as follows:

1. Wahpeton's motion for partial summary judgment on validity of the '746 patent is **granted** as to the questions of the effectiveness of the reissue declaration, anticipation of the patented invention, and indefiniteness of the patent, but **denied** as to obviousness of the patent under 35 U.S.C. § 103.

2. Wahpeton's motion for partial summary judgment as to infringement is granted as to direct infringement only as to the complete units Bremer has sold, although the precise number of such units, and the damages flowing from such sales, remain questions of fact for trial. Wahpeton's motion for partial summary judgment is denied as to any other claim of direct or contributory infringement.

3. Wahpeton's motion for partial summary judgment on Bremer's antitrust counterclaim is **granted.**

**IT IS SO ORDERED.**